2001 WY 58

**Courtney J. VAN RIPER,**
**Appellant (Plaintiff),**

v.

**Byron OEDEKOVEN, Sheriff of Campbell County, Wyoming; Gregory Bennick, the Administrator of the Campbell County Detention Center; Jackie Tarter, Shift Supervisor at the Campbell County Detention Center, Appellees (Defendants).**

No. 00–274.

Supreme Court of Wyoming.

June 20, 2001.

Rehearing Denied July 17, 2001.

Courtney J. Van Riper, pro se, Rawlins, WY, Representing Appellant.

Gay Woodhouse, Wyoming Attorney General; Michael L. Hubbard, Deputy Attorney General; and John D. Rossetti, Assistant Attorney General; Charlene Lynde, Deputy County and Prosecuting Attorney, Gillette, WY, Representing Appellees.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

HILL, Justice.

[¶ 1] Appellant, Courtney J. Van Riper (Van Riper), seeks review of an order of the

district court which dismissed his Civil Rights Action, filed pursuant to 42 U.S.C § 1983, for the reason that it failed to state a claim upon which relief could be granted. W.R.C.P. 12(b)(6).

[¶ 2]   We will affirm.

## ISSUES

[¶ 3]   Van Riper presents this statement of the issues:

I.   Whether the Circuit [*sic*] [District] Court Erred in Granting the Defendants' Motions to Dismiss the 42 USC § 1983 Civil Right Complaint for Failure to State a Claim Pursuant to Wyoming Rule of Civil Procedure 12(b)(6)?

II.   Whether the Clerk of Sixth Judicial Circuit [*sic*] [District] Court Exceeded Wyoming Statutory Authorization, as Codified at Wyo. Stat. § 5–2–202, in Demanding an $85.00 Supreme Court Filing Fee in this Matter?

Appellees, Byron Oedekoven (Oedekoven), Gregory Bennick (Bennick), and Jackie Tartar (Tartar) (in their individual capacities) propose these issues for our consideration:

I.   The District Court Correctly Granted Defendants' Motions to Dismiss for Failure to State a Claim Pursuant to Wyo. R. Civ. P. 12(b)(6).

II.   The Clerk of the Sixth Judicial District Court Correctly Assessed an $85.00 Supreme Court Filing Fee.

The Appellees (in their official capacities) state this issue:

1.   The District Court Properly Granted The Defendants' Motion to Dismiss, Filed In Their Official Capacities, for Failure to State a Claim For Which Relief Could Be Granted Under § 42 U.S.C.1983, Pursuant to Rule 12(b)(6) of the Wyoming Rules of Civil Procedure.

## FACTS

■   [¶ 4]   On September 17, 1998, Van Riper filed his Civil Rights Action in the district court[1].   Van Riper purported to bring this action on behalf of himself, as well as a class of persons "comprised of all similarly situated past, present, and future pretrial and sentenced prisoners" confined in the Campbell County Detention Center (CCDC). Appellee Oedekoven is the Campbell County Sheriff.   Appellee Bennick is a Campbell County Deputy Sheriff and Administrator of the CCDC. Appellee Tartar is a Campbell County Deputy Sheriff who is in charge of the day shift at the CCDC. We accept for purposes of the disposition of this appeal that all Appellees were acting, at all times, under color of the laws of the State of Wyoming.

[¶ 5]   Van Riper alleges these facts in his initial complaint.   The law library at the CCDC is located in the Visiting Room. The Visiting Room is used for many other purposes, including for visits with prisoners (16+ hours a week), church services and fellowship meetings (7.5 hours per week), AA and NA meetings (4 hours per week), and counseling meetings (2 hours per week). The law library contains a legal research computer, as well as a significant number and variety of legal research books.   There is no librarian and no other CCDC personnel who can assist prisoners in doing legal research.   The legal research computer is, in reality, "available" only to prisoners who are knowledgeable enough to use it.   Other legal materials are available through inter-library loan, but that takes "several days to a week or more."   Legal materials may only be used in the CCDC Visiting Room and may not be taken to jail cells. Van Riper claims that, in addition to the various other uses of the law library listed above, other CCDC rules and regulations further reduce the number of hours that the law library is available for legal research purposes.   Van Riper claims that certain legal materials that are critical to a prisoner's research efforts are not avail-

---

**1.**   State courts have concurrent jurisdiction with the federal courts over § 1983 actions. *Teton Plumbing & Heating v. Laramie County School Dist. No. One,* 763 P.2d 843, 847, n. 2 (Wyo. 1988).   The elements required to establish a claim for relief pursuant to § 1983 are: "(1) that the conduct complained of was engaged in under color of state law, and (2) that such conduct subjected the plaintiffs to a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States." *Id.*

able, and that CCDC "regularly" interferes with prisoners gaining access to the law library or allowing inmates with legal research experience (such as Van Riper) to assist other prisoners (Van Riper cites four circumstances where he was not permitted to assist other prisoners).

[¶ 6] Van Riper contends CCDC does not provide carbon paper for use by prisoners but instead charges the "exorbitant" rate of $1.00 for the first copy and $.25 for each copy thereafter (on occasion the charges are even higher). Van Riper contends he was charged $50.00 for the copying "necessary" to complete the administrative procedures relevant to the instant matter, and that ZIP Printing of Gillette would have done it for $10.00. According to Van Riper, these copying charges, as well as other CCDC policies, are used to chill and frustrate a prisoner's ability to pursue legitimate grievances and other legal remedies. At a later time, Van Riper was again charged excessive sums for copies.

[¶ 7] Van Riper contends that CCDC requires inmates to use 50% of funds they have on account to pay for medical costs, even when they may be indigent.

[¶ 8] Van Riper also avers that the CCDC policy which limits prisoners to making only collect phone calls at a cost of $2.95 (and does not permit "800" calls to be made to lawyers) chills and frustrates the prisoners' right to contact their families, the prisoners' right to self-representation and to contact lawyers and courts, and earns the CCDC an undue profit from every call made by prisoners. In addition, CCDC does not maintain a mail log to ensure that legal mail is not tampered with or delayed.

[¶ 9] Van Riper contends that prisoners, upon arrival at CCDC, are deprived of personal hygiene items, cleaning supplies, as well as bed, pillow, and linens. In addition, overcrowded conditions often exist resulting in physical injury, and bright overhead lights that are on 24 hours a day result in sleep deprivation. Van Riper does not specifically allege that he was subjected to such treatment.

[¶ 10] Van Riper contends that non-medically trained personnel are permitted to dispense prescription, non-prescription and controlled medications to prisoners on a regular basis. Van Riper contends that mistakes are made by these non-trained personnel and that, in his own personal instance, he was given a double dose of a "strong sedative," and Van Riper had to call the error to a CCDC staff member's attention.

[¶ 11] Van Riper asserts that the CCDC, contrary to the facility's policies, routinely allows violent and assaultive prisoners to be placed in the jail's general population. CCDC then does nothing to prevent those violent and assaultive inmates from engaging in lengthy reigns of terror and intimidation over younger and weaker prisoners. Van Riper relates a specific instance where such an event occurred, though it did not affect him.

[¶ 12] In this initial complaint, Van Riper sought declaratory relief, injunctive relief, nominal damages of $25.00 against each Appellee, a refund of profits from the phone system, his fees, costs and expenses for this action, as well as any other relief the district court might find just and appropriate.

[¶ 13] On September 28, 1998, Van Riper filed a "Supplemental and Amended Complaint." This document contained additional allegations concerning Civil Rights Act violations. Van Riper averred that another inmate at CCDC had sought to use the law library during nighttime hours and that request was denied. He claimed that he asked for five legal texts and that, in retaliation for a yet unfiled complaint, Appellee Bennick deliberately delayed acting on that request for five days. Van Riper asserted that other requests for legal materials were ignored or denied, including a request for information on how to serve the instant suit on Appellees. However, the Appellees eventually accepted service of his complaints. He also contends that he was denied nighttime access to the law library, and that when another group cancelled its usual time to use the law library area and he was granted access to make use of that time, he was subjected to a pat-down search (degrading), and that the officer conducting the search deliberately slammed his hands into Van Riper's groin.

[¶ 14]   Van Riper alleges that on the day the instant law suit was filed and served, Van Riper's cell was subjected to a "shake-down" search and his legal materials were scattered about his cell (and were partially damaged), and CCDC personnel confiscated "two blue paper/clear plastic with soft metal clips [legal folders]." Van Riper was not reimbursed for this loss.

[¶ 15]   Van Riper maintains that during May of 1998, he was asked by CCDC personnel to assist other inmates in doing legal research (because of his computer research expertise), and he successfully provided such assistance to a number of inmates. After filing of the instant case, Appellee Bennick issued a new policy denying Van Riper the "right" to assist other inmates and, further, drastically reduced Van Riper's access to the law library and to legal materials.

[¶ 16]   Van Riper claims he was charged with a major disciplinary infraction (use of profanity) when, under normal circumstances, even much more offensive use of profanity goes unpunished.

[¶ 17]   Van Riper claims a disabled inmate, who filed a lawsuit under the Americans with Disabilities Act, was placed in administrative segregation on the pretext that the inmate required medical monitoring.

[¶ 18]   Van Riper claims he was denied notary service necessary to his access to the courts.

[¶ 19]   Van Riper alleges that he was denied the right to call witnesses at his disciplinary hearing (for use of profanity) that resulted in a punishment of five days in disciplinary lockdown status.

[¶ 20]   He further alleges that, in a staged incident, another inmate used the same profanity that Van Riper had used ("take a meal tray and shove it up [Appellee] Bennick's ass"). That inmate was not punished; thus, according to Van Riper, demonstrating that the disciplinary action taken against him was retaliatory in nature.

[¶ 21]   On November 2, 1998, Van Riper filed his "Second Supplemental Complaint." In that document he asserted that, as a prisoner committed to an institution of the Department of Corrections (DOC) [2], the DOC had always provided him with needed medical services including prescription eyeglasses, which he needs to read and write. Van Riper's eyeglasses came up missing in April 1998. CCDC would not replace the missing eyeglasses but did loan him a pair of reading glasses and later permitted Van Riper to purchase a pair of reading glasses from K–Mart in October 1998, at a cost of $10.49. Those eyeglasses were broken, and by way of CCDC "Inmate Request" form dated October 16, 1998, Van Riper informed the CCDC that his eyeglasses were broken and "unusable" and that he would like to purchase a new pair of eyeglasses. On October 17, 1998, Van Riper submitted another "Inmate Request" form, this one asking for the broken eyeglasses that had been replaced (he said he could use them in case one of the lenses in his new eyeglasses broke). However, a CCDC employee named McElhiney had construed Van Riper's use of the word "unusable" to mean that they were "useless," and he had thrown them away. On October 19, 1998, Van Riper made demand on McElhiney for $10.49 via an "Inmate Request" form. Appellee Bennick intercepted that request, and Bennick offered to give Van Riper $3.00 to settle his "claim." In yet another "Inmate Request" form, Van Riper informed Appellee Bennick:

> Your offer of a $3.00 settlement for the glasses thrown away by D. McElhiney is hereby *rejected.* [Emphasis in original] Kindly refrain from interfering again with my attempt to comply with the small claims court requirement to make formal demand for payment on Officer D. McElhiney. I could not care less about your communications with W.S.P.[3]! What you should understand is that I intend to nail you to the courthouse door, and will spend every waking moment and penny to that

---

**2.**  *See Van Riper v. State,* 999 P.2d 646 (Wyo. 2000); and *Van Riper v. State,* 882 P.2d 230 (Wyo.1994).

**3.**  This is a reference to Appellee Bennick's previous comment, made after consultation with the Wyoming State Penitentiary (WSP), that Van Riper could not have such broken glasses at the WSP.

end. Now, retaliate against me to your heart's content!

[¶ 22] Appellee Bennick's response was limited to a renewal of his offer to pay Van Riper $3.00 for the broken glasses and the provision of information which directed Van Riper how to obtain Small Claims Court forms. Van Riper sent a two-page letter to Appellee Bennick asserting that Bennick was interfering with his access to the Small Claims Court by not permitting his demand to go directly to McElhiney.

[¶ 23] On November 30, 1998, Van Riper filed a "Notice of Voluntary Dismissal" of the instant lawsuit, but the district court did not act on it. On December 4, 1998, Van Riper filed a motion to withdraw his voluntary dismissal or for relief from dismissal if it had been granted. Various motions to dismiss, as well as supporting legal memoranda, were submitted on behalf of all Appellees. By order dated August 21, 2000, the district court entered a five-line decision which dismissed Van Riper's complaint "[f]or the reasons stated in the defendant's moving papers and briefs."

## STANDARD OF REVIEW

[¶ 24] When claims are dismissed under W.R.C.P. 12(b)(6), this Court accepts the facts stated in the complaint as true and views them in the light most favorable to the plaintiff. Such a dismissal will be sustained only when it is certain from the face of the complaint that the plaintiff cannot assert any facts that would entitle him to relief. *Story v. State*, 2001 WY 3, ¶ 19, 15 P.3d 1066, ¶ 19 (Wyo.2001). Dismissal is a drastic remedy and is sparingly granted; nevertheless, we will sustain a W.R.C.P. 12(b)(6) dismissal when it is certain from the face of the complaint that the plaintiff cannot assert any set of facts that would entitle that plaintiff to relief. *Robinson v. Pacificorp*, 10 P.3d 1133, 1135–36 (Wyo.2000).

## DISCUSSION

[¶ 25] Although Van Riper does appear to have abandoned some of the claims made in the district court, his brief focuses on two of those issues in particular, and he makes passing mention of several other issues.

[¶ 26] First, Van Riper claims he was subjected to retaliatory mistreatment because he was a successful "jailhouse lawyer." The State concedes his success with respect to matters affecting him, as well as success in helping others. As set out above, he was at one time asked to help other inmates who were not familiar with computer-based research. However, when he was no longer permitted to provide such assistance, CCDC made other arrangements for assisting other inmates. We do not perceive any allegations made by Van Riper as suggesting this as retaliation either for his success as a "jailhouse lawyer," or as retaliation for the instant case against CCDC and its employees. The remainder of Van Riper's allegations we view as merely an effort by him to unsuccessfully fit the "square pegs" of his experiences into the "round holes" of the standards enunciated in *Penrod v. Zavaras*, 94 F.3d 1399, 1404–05 (10th Cir.1996). For example, Penrod averred that he was denied toothpaste to which he was entitled, and the basis for the denial was specifically stated to be the existence of his litigation. Van Riper, on the other hand, contends CCDC personnel retaliated against him by disciplining him, but his own pleadings belie that because he admitted that he committed the offense for which he was disciplined. His supposition was that another inmate who did the same thing was not disciplined and, therefore, it had to be that Van Riper was disciplined for retaliatory reasons. We do not accept that reasoning process, and we agree with the district court that the allegations made by Van Riper do not demonstrate a retaliatory animus.

[¶ 27] Second, Van Riper contends he was denied access to the courts because Appellee Bennick would not allow his demand under the small claims procedures to go directly to Officer McElhiney. *See* Wyo. Stat. Ann. § 1–21–202(a) (LEXIS Supp.2000). Van Riper misconstrues that statute. It only requires that a demand for payment of a small claim have been made and refused. Moreover, Van Riper never did file his small claim, so exactly how the district court would have treated his pleadings is unknown. We

conclude that Van Riper's real problem is not that he was denied access to the courts—but that he was denied the opportunity to nail Appellee Bennick to the courthouse door.

[¶ 28] We agree with the district court that the remainder of Van Riper's claims were frivolous and properly dismissed under W.R.C.P. 12(b)(6), as well as 28 U.S.C. § 1915(e)(2)(B)(2) (2000). This is especially true given that the district court did not dismiss the complaints until after summonses had been served on all Appellees and Van Riper had been given an opportunity to respond to Appellees' moving papers.

[¶ 29] Van Riper suggests that he has a "right" to provide his legal services to other inmates, or at least that inmates have a "right" to consult with him. The United States Supreme Court has, in our view, put such a construct to rest. Discussing the topic of an inmate's right to provide legal advice in the role of a "jailhouse lawyer," the court noted that the right to provide legal advice does not necessarily follow from a right to receive legal advice:

> However, even if one right followed from the other, Murphy is incorrect in his assumption that there is a free-standing right to receive legal advice. Under our right of access precedents, inmates have a legal right to receive legal advice from other inmates only when it is a necessary "means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey,* 518 U.S. 343, 350–51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (quoting *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)).

*Shaw, et al. v. Murphy,* 532 U.S. 223, ——, n. 3, 121 S.Ct. 1475, 1480, n. 3, 149 L.Ed.2d 420 (2001).

[¶ 30] We will briefly mention four other issues to which Van Riper makes direct reference in his brief.

[¶ 31] (1) Exorbitant copying charges. Van Riper points to no actual injury to himself or to any other inmate, nor does he allege that he had no other reasonable alternatives to photocopying. *See John-*

*son v. Moore,* 926 F.2d 921, 925 (9th Cir. 1991).

[¶ 32] (2) Exorbitant phone charges. Van Riper points to no actual injury to himself or others. There is no authority for the proposition that prisoners are entitled to a specific rate for telephone calls. There is nothing in Van Riper's complaint that suggests that the rates charged are so exorbitant as to deprive the inmate of phone use altogether. *See Johnson v. State of California,* 207 F.3d 650, 656 (9th Cir.2000).

[¶ 33] (3) Medical care payments by inmates. Wyo. Stat. Ann. § 18–6–303 (LEXIS 1999) provides:

**18–6–303. Care of prisoners; audit of expenses.**

. . . .

(b) The sheriff shall arrange for the administration of medical care reasonably required by prisoners committed to his custody.

(c) The county commissioners shall pay for reasonable and necessary medical care for:

(i) Injuries incurred by a prisoner:

(A) While in custody if the injuries are the proximate result of negligent or intentionally tortious acts committed by the sheriff or a member of his staff;

(B) During an arrest by the sheriff or a member of his staff for commission of a crime, provided the injuries were not incurred while unlawfully resisting arrest;

(C) While on work release or when performing duties assigned by the sheriff or a member of his staff.

(ii) Any infectious, contagious or communicable disease which the prisoner contracts while he is in custody; or

(iii) Medical examinations required by law or court order unless the order otherwise provides.

(d) Unless indigent, a prisoner shall pay the cost of medical treatment for:

(i) Injuries incurred by that prisoner:

(A) While in custody if the injuries are not the proximate result of negligent

or intentionally tortious acts committed by the sheriff or a member of his staff;

(B) During the commission of a crime; and

(C) While unlawfully resisting arrest or attempting to avoid an arrest.

(ii) Self-inflicted injuries;

(iii) Pre-custodial injuries or illness;

(iv) Pre-custodial dental conditions; and

(v) Any other injuries not covered under subsection (c) of this section.

(e) A health care provider furnishing treatment to a prisoner for which the prisoner is liable for payment shall attempt to collect the cost of the treatment from the prisoner or his insurance carrier. If the provider is unable to collect the cost after making reasonable efforts to secure collection, and the provider certifies by affidavit to the board of county commissioners that it is unable to collect the cost of medical treatment, the board of county commissioners, following payment, may initiate proceedings to collect from the prisoner any amounts so paid.

(f) The sheriff may require a nonindigent prisoner to pay for any medical treatment under subsection (d) of this section, including any voluntary or involuntary mental health evaluation. Necessary medical treatment shall not be denied based upon a prisoner's inability to pay.

Van Riper can point to no actual injury to himself, or to any other inmate, under this statute.

[¶ 34]   (4) Dispensing medications by untrained personnel. Van Riper can point to no actual injury. to himself or any other inmate as a result of what he alleges to be a "policy." In any event, the applicable standard of care is deliberate indifference to a prisoner's serious medical needs. *Story*, ¶ 18. Van Riper's allegations do not rise to that standard.

[¶ 35]   Finally, Van Riper asserts that he was improperly charged $85.00 for the docketing of his appeal in this Court. Wyo. Stat. Ann § 5–2–202 (LEXIS Supp.2000) provides:

> The clerk of the supreme court shall collect the following fees from the plaintiff in error or appellant, or in case of an original proceeding the plaintiff or relator shall, at the time of filing the petition in error or record on appeal or when commencing the cause in this court, the sum of twenty-five dollars ($25.00). At the time of filing, the clerk also shall collect a court automation fee in the amount of ten dollars ($10.00) which shall be deposited into the judicial systems automation account established by W.S. 5–2–120. Other fees or charges to be assessed within the clerk's office are to be determined under rules of the supreme court.

[¶ 36]   Under the above statute, as well as authority established in W.R.A.P. 2.09(b) and Wyo. Stat. Ann. § 5–2–120 (LEXIS Supp. 2000), and by order entered on May 9, 2000, this Court set the fee for docketing an appeal at $75.00, plus $10.00 for the judicial systems automation account. The district court was correct in dismissing this aspect of Van Riper's complaint for failure to state a claim.

[¶ 37]   The order of the district court dismissing Van Riper's complaint is affirmed in all respects.