2003 WY 21

**Maile A. REHNBERG, Appellant (Plaintiff),**

v.

**Alan S. HIRSHBERG, Appellee (Defendant).**

No. 02–106.

Supreme Court of Wyoming.

Feb. 20, 2003.

Jessica Rutzick of the Law Offices of Lawrence B. Hartnett, Jackson, Wyoming, Representing Appellant.

Joseph F. Moore, Jr. and R. Scott Garland of Moore, Myers & Garland, LLC, Jackson, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] Maile A. Rehnberg (Rehnberg) appeals from the district court's Order Granting Defendant's Motion to Dismiss. Rehnberg's complaint alleged breach of a real estate sales contract, breach of the covenant of good faith and fair dealing, and tortious interference with contract, and also sought contractual attorney's fees. We affirm the district court's dismissal of the complaint pursuant to W.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## ISSUES

[¶ 2] Rehnberg raises the following issues:

1. Is paragraph 12 of Attachment "A" to the contract ambiguous?

2. Does the complaint allege facts that, if taken as true, establish a cause of action for breach of contract, breach of the duty of good faith and fair dealing and contractual attorney's fees?

3. Does the complaint allege facts that, if taken as true, establish a cause of action for tortious interference with contract?

[¶ 3] The appellee, Alan S. Hirshberg (Hirshberg), does not present a separate list of issues, but raises the following additional arguments in his appellate brief:

1. Did the contract merge into the warranty deed?

2. Did a condition precedent fail to occur?

3. Are Rehnberg's claims barred by the statute of frauds?

4. Was there a lack of consideration? [1]

---

1. Hirshberg's appellate brief lists eleven "legal arguments," but most are defenses to Rehnberg's claims rather than separate issues.

## FACTS[2]

[¶ 4] Hirshberg owned Lot 2 of McNeely Mountain subdivision in Teton County. In 1998, Hirshberg and others sued Countryside I, LLC for its alleged breach of contractual duties to honor licenses to fish along certain creeks and to honor use agreements for the dining lodge and other facilities located within Crescent H Guest Ranch.[3] Hirshberg's interest in the fishing licenses and use agreements derived from his ownership of Lot 2. The civil action against Countryside seeks, among other things, specific performance with respect to the fishing licenses and use agreements.

[¶ 5] In 1999, Hirshberg listed Lot 2 for sale, with an asking price of $895,000.00 with the Crescent H fishing rights, and $595,000.00 without those fishing rights. The property was again listed for sale, with the same asking prices, in January 2000. Later in 2000, Hirshberg again listed Lot 2 for sale, this time with an asking price of $649,000.00 and no mention of fishing rights. In September 2000, after Rehnberg's initial offer to purchase Lot 2 expired, Hirshberg listed it again, this time with an asking price of $895,000.00. Later in September 2000, Rehnberg offered to purchase Lot 2 for $735,000.00. The offer was contained in a standard form Contract to Buy and Sell Real Estate. During the negotiations that followed, Hirshberg and his real estate agent told Rehnberg that she would have the right to substitute herself for Hirshberg in the Countryside case. On October 25, 2000, Hirshberg accepted Rehnberg's counteroffer of $795,000.00. Paragraph 12 of Attachment "A" to the Contract to Buy and Sell Real Estate reads as follows:

> This offer is based upon said property being sold without any fishing rights. However, should litigation, which is currently underway, result in fishing rights, Seller agrees to transfer all fishing rights to Buyer.

[¶ 6] At closing, Rehnberg was not provided with any written assignments of the fishing rights or use agreements. During the next few months, her attempts to contact Hirshberg or his attorney to obtain such assignments were unsuccessful. In May 2001, Michael Olin (Olin) offered to purchase Lot 2 from Rehnberg, but he wanted an assignment of the fishing rights and use agreements. In response to a communication from Rehnberg to Hirshberg's realtor, Hirshberg informed Rehnberg and Olin that he would provide Rehnberg with an assignment of the fishing rights for $125,000.00, would provide Olin with an assignment of the fishing rights and use agreements for an additional $75,000.00 plus another $50,000.00 in the event the Countryside lawsuit was successfully resolved.

[¶ 7] As a result of Hirshberg's demands for additional payments, Olin withdrew his offer to purchase Lot 2. Hirshberg continues to pursue his own interests in the Countryside lawsuit, including damages for "deprivation of use, preclusion from the fishing lands, inability to use the club facilities, and diminution in value of his real property holdings . . .," but is not pursuing Rehnberg's interest in obtaining a fishing license and use agreement.

## STANDARD OF REVIEW

[¶ 8] Hirshberg filed a Motion to Dismiss based on W.R.C.P. 12(b)(6), which provides for a motion alleging "failure to state a claim upon which relief can be granted[.]" We recently restated our standard of review applicable to the dismissal of claims under this rule:

> "When claims are dismissed under W.R.C.P. 12(b)(6), this Court accepts the facts stated in the complaint as true and views them in the light most favorable to the plaintiff. Such a dismissal will be sustained only when it is certain from the face

---

2. Because we are reviewing the dismissal of a complaint under W.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted, we accept as true all the facts alleged in the complaint, and examine those facts in the light most favorable to Rehnberg. *Feltner v. Casey Family Program*, 902 P.2d 206, 207 (Wyo.1995).

3. For a detailed analysis of this controversy, *see Masinter v. Markstein*, 2002 WY 64, ¶¶ 3–5, 45 P.3d 237, 239–40 (Wyo.2002).

of the complaint that the plaintiff cannot assert any facts that would entitle him to relief. *Story v. State*, 2001 WY 3, ¶ 19, 15 P.3d 1066, ¶ 19 (Wyo.2001). Dismissal is a drastic remedy and is sparingly granted; nevertheless, we will sustain a W.R.C.P. 12(b)(6) dismissal when it is certain from the face of the complaint that the plaintiff cannot assert any set of facts that would entitle that plaintiff to relief. *Robinson v. Pacificorp*, 10 P.3d 1133, 1135–36 (Wyo. 2000)."

*Manion v. Chase Manhattan Mortgage Corp.*, 2002 WY 49, ¶ 6, 43 P.3d 576, 577 (Wyo.2002) (*quoting Van Riper v. Oedekoven*, 2001 WY 58, ¶ 24, 26 P.3d 325, ¶ 24 (Wyo.2001)).

 [¶ 9] Our rules of contract construction are well known. First, we do not need to construe contracts that are not ambiguous. *Evans v. Farmers Ins. Exchange*, 2001 WY 110, ¶ 9, 34 P.3d 284, 286 (Wyo. 2001).

Whether a contract is ambiguous is a question of law. *O'Quinn Enterprises [v. Central Wyoming Regional Water System Joint Powers Board]*, 975 P.2d [1062], 1064 [ (Wyo.1999) ]. When deciding whether a contract is ambiguous, we endeavor to determine the intention of the parties. *Wolter [v. Equitable Resources Energy Company, Western Region]*, 979 P.2d [948], 951 [ (Wyo.1999) ]. An ambiguity exists when a contract's language conveys an obscure or double meaning. *Kirkwood v. CUNA Mutual Insurance Society*, 937 P.2d 206, 208 (Wyo.1997). When contract provisions are not ambiguous or uncertain, the document speaks for itself. 937 P.2d at 209. With an unambiguous agreement, we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the document. *Wolter*, 979 P.2d at 951. All conversations, contemporaneous negotiations, and parol agreements between the parties that occurred prior to the written agreement are merged into the written agreement. *O'Quinn Enterprises*, 975 P.2d at 1064. We turn to extrinsic evidence and rules of

contract construction only when the contract language is ambiguous and its meaning is doubtful or uncertain. *Wolter*, 979 P.2d at 951.

*Sowerwine v. Keith*, 997 P.2d 1018, 1020 (Wyo.2000).[4] And finally, a "district court judgment may be affirmed on any proper legal grounds supported by the record." *Bird v. Rozier*, 948 P.2d 888, 892 (Wyo.1997).

## DISCUSSION

[¶ 10] In his Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, Hirshberg presented six theories: first, the contract specifically excepted fishing rights; second, the contract made no mention of any use agreements; third, the contract did not obligate him to represent Rehnberg in the Countryside lawsuit; fourth, the integration clause of the contract forbids modification of its terms by any alleged oral agreements or representations; fifth, the statute of frauds forbids modification of the contract by any alleged oral agreements or representations; and sixth, the provisions of the contract merged into the deed, leaving Rehnberg to look to the deed, and not to the contract. In her Response to Defendant's Motion to Dismiss, Rehnberg asserted first that the language of paragraph 12 of Attachment "A" creates a "current and continuing obligation" on Hirshberg's part to attempt to obtain the fishing rights or to allow Rehnberg to represent her own interests in the Countryside lawsuit. Next, relying on the "collateral obligations rule," Rehnberg argued that the contract provisions did not merge into the deed because the assignment of fishing rights would have had to occur after closing. Finally, Rehnberg contended that the integration clause is immaterial because the source of her rights is the ambiguous provisions of paragraph 12 of Attachment "A," rather than any oral representations or agreements.

[¶ 11] In its Order Granting Defendant's Motion to Dismiss, the district court found that "[a]ll of the claims [in the Complaint] are based on paragraph 12 of Attachment A to the Contract...." The district court then

4. Although it is a minor distraction in the parties' briefing, we feel compelled to mention that extrinsic evidence is limited by the "parol evidence rule," not the "parole evidence rule."

concluded that paragraph 12 was unambiguous, and that it "does not place any obligations on [Hirshberg] other than to transfer fishing rights if they are awarded in [the Countryside case]." Finally, the district court also emphasized paragraph XV of the Contract to Buy and Sell Real Estate, the integration clause, which provided as follows:

All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements or representations between Buyer, Seller or Brokers to modify the terms and conditions of this Contract.

[¶ 12] The nature of the district court's ruling raises the issue we find dispositive in this appeal. Rehnberg drafted a complaint relying solely on the contract for sale. When Hirshberg raised the merger defense, Rehnberg countered with legal and factual arguments as to why the merger doctrine should not be applied. Without directly ruling on the merger question, the district court based its dismissal on the contract for sale, which indicates that the district court agreed with Rehnberg that the contract for sale did not merge into the warranty deed. Rehnberg continues to assert on appeal that application of merger is inappropriate. Hirshberg likewise continues to argue to the contrary.

[¶ 13] A contract for the sale of realty is executory until closing, at which time the contract has been executed, it merges with the deed, and it is no longer separately enforceable. *Richardson v. Hardin,* 5 P.3d 793, 798 (Wyo.2000); *40 North Corp. v. Morrell,* 964 P.2d 423, 426 (Wyo.1998); *Bakken v. Price,* 613 P.2d 1222, 1227 (Wyo. 1980). Thereafter, the rights and obligations of the parties are controlled by the deed. *Bakken,* 613 P.2d at 1227. An exception to merger, called the "collateral obligations rule," provides that contractual obligations that are collateral to the transaction survive closing and may be enforced under the contract. *Richardson,* 5 P.3d at 799; *American Nat. Self Storage, Inc. v. Lopez–Aguiar,* 521 So.2d 303, 305 (Fla.App.1988); and Lawrence Berger, *Merger by Deed—What Provisions of a Contract for the Sale of Land Survive the Closing?,* 21 Real Estate L.J. 22, 24 (1992). A collateral obligation is one that is not "deed-related." Lawrence Berger, *supra,* 21 Real Estate L.J. at 32. Deed-related provisions are those concerning " 'title, possession [and] quantities or emblements of the land....' " *Bakken,* 613 P.2d at 1232 (McClintock, J., concurring in part and dissenting in part) (*quoting Chavez v. Gomez,* 77 N.M. 341, 423 P.2d 31, 33 (1967)).

[¶ 14] To apply these concepts, we must review the pertinent facts set forth in the complaint. Once again, these facts are presented in the light most favorable to Rehnberg and are assumed to be true. Hirshberg advertised Lot 2 for sale. Rehnberg made an offer to purchase Lot 2. Negotiations ensued, during which Rehnberg was told that she would be able to substitute herself for Hirshberg in the Countryside lawsuit. Eventually, the parties signed the sale contract.

[¶ 15] Rehnberg contends that, in addition to the duty to convey Lot 2, the sale contract created three other duties on Hirshberg's part: the duty to assign the fishing rights, the duty to assign the Crescent H use agreement, and the duty actively to pursue Rehnberg's interests in the Countryside lawsuit or to allow her to be substituted for Hirshberg in that lawsuit. Before we can determine whether any of these obligations merged with the deed, we must first determine whether they actually were created by the sale contract.

[¶ 16] The district court made the dual findings that the sale contract was unambiguous and that it was a fully integrated contract. We agree. The integration clause clearly established the parties' intent that the written terms contain their entire agreement, which is not to be modified by prior negotiations. Further, the pertinent portions of the sale contract are not ambiguous because the intent of the parties is clearly revealed in the words used. We see no double meanings or obscure language. In such case, the search for the parties' intent is limited to the four corners of the document, and such intent may not be modified or determined through parol evidence. *Goglio v. Star Valley Ranch Ass'n,* 2002 WY 94, ¶¶ 26, 31, 48 P.3d 1072, 1081, 1084 (Wyo.2002); *Barlage v. Key Bank of Wyoming,* 892 P.2d 124, 127 (Wyo.1995).

**120**

[¶ 17] The question then is whether the unambiguous language of the sale contract created any of the duties alleged by Rehnberg. Clearly, it did not. There was no mention whatsoever in the contract of the Crescent H use agreements. Fishing rights are specifically excluded from the sale. And any duty to assign fishing rights obtained in litigation was intended to arise only upon successful completion of that litigation. Had the parties intended to create an obligation on Hirshberg's part actively to pursue fishing rights on Rehnberg's behalf, or to help Rehnberg substitute herself for Hirshberg in the lawsuit, such easily could have been stated. It was not.

[¶ 18] Our conclusion that the purported duties were not created by the contract obviates any necessity to determine whether those duties merged into the deed. Perhaps that was the district court's rationale for not ruling specifically on the merger issue. At any rate, we conclude that the decision of the district court must be affirmed.

[¶ 19] One other issue requires mention. In her complaint, Rehnberg alleged that Hirshberg's interests in the fishing rights and use agreement derived from his ownership of Lot 2, and that those interests were appurtenant to Lot 2. That allegation is not pursued, however, and Rehnberg provides no cogent argument or citation to authority as to the effect, if any, of such appurtenant status. Consequently, we will not pursue a detailed analysis of the issue. *Eustice v. State,* 11 P.3d 897, 904 (Wyo.2000).

### CONCLUSION

[¶ 20] The unambiguous and fully integrated contract for sale did not require Hirshberg to assign fishing rights or Crescent H use agreements to Rehnberg, nor did it require Hirshberg actively to pursue fishing rights on Rehnberg's behalf or to assist Rehnberg in substituting herself for Hirshberg in the Countryside lawsuit.

[¶ 21] We affirm.