BOOMGAARDEN, Justice.
*575 [¶1] Dan B. James and Shawn L. Eby appeal from the district court's order granting summary judgment, which found Taco John's International, Inc. (TJI) properly terminated the two corporate executives for violating their employment agreements. We affirm.
ISSUES
[¶2] We condense, rephrase, and reorganize the issues on appeal as follows:[1]
I. Is TJI entitled to summary judgment because the employment agreements unambiguously prohibited Mr. James and Mr. Eby from forming a new company and seeking other franchise opportunities while employed by TJI?
a. Are the employment agreements ambiguous, thus requiring consideration of parol evidence to determine the parties' intent?
b. Do genuine issues of material fact preclude summary judgment?
II. Did TJI's President and Chief Executive Officer (CEO) have apparent authority to allow Mr. James' and Mr. Eby's participation in a business venture unrelated to TJI and contrary to the terms of their employment agreements?
FACTS
[¶3] Mr. James and Mr. Eby were franchise executives with decades of experience in the fast food industry. In May 2013, TJI hired Mr. James as its Chief Development Officer, and Mr. Eby as its Vice President of Operations, at the behest of Jeff Linville, TJI's recently hired President and CEO (collectively referred to as the Linville Team). At the time they were hired, Mr. James and Mr. Eby executed nearly identical employment agreements requiring both to "devote all of [their] time, attention, knowledge and skills solely to the business and interest of Employer." Employment Agreements, Section V. The employment agreements permit termination for cause without advance notice "[i]n the event of any violation by Employee of any of the terms of this Agreement. ..."[2] Employment Agreements, Section XII (B).
[¶4] In mid-2016, Mr. Linville informed TJI's compensation committee of his wife's desire to become a Beef Jerky Outlet (BJO) franchisee as her "hobby" and that he, Mr. James, and Mr. Eby would be investors in her business. The compensation committee informed TJI's general counsel of the Linville Team's plan to invest in the BJO franchise. Around this time, TJI's Chief Financial Officer (CFO) became concerned about a trip the Linville Team took to Tennessee. TJI's general counsel and CFO investigated the matters and discovered the Linville Team's participation in the BJO venture included more than investing capital as represented by Mr. Linville. They discovered the following information.
[¶5] Mr. James and Mr. Eby participated in a conference call to learn about the BJO franchise and viewed a BJO webinar from TJI's corporate offices in Cheyenne, Wyoming in the spring of 2016. On April 25, 2016, Mr. Linville created and registered a Colorado entity, Last Bite Jerky, LLC, for their BJO venture and listed the Linville Team as its sole members. In May of 2016, the Linville Team drafted a business plan to present to BJO and to aid in obtaining financing. The business plan stated Mr. Linville, Mr. James, and Mr. Eby were the company's sole "partners" and provided the following "ownership responsibilities":
Each member of our management team will share in all decisions, however, we will use our expertise in the following manner.
*576 Shawn Eby will have the responsibilities of all operational decisions, including hiring, training, inside sales building, cleanliness, and inventory management. Dan James will be responsible for all real estate decisions, market viability and lease negotiations. He will also oversee the buildout process. Jeff Linville will handle some administrative costs and marketing of the business. Also, Sharon Linville is a C.P.A. and will handle the administrative side (taxes, accounting, payroll, etc.).
The business plan also stated the company's goal of owning two franchises by the end of 2016 and progressively acquiring more for a total of fifteen by the end of 2021. Mr. Linville saved the business plan on TJI's internal network. The Linville Team also executed a comprehensive operating agreement for Last Bite Jerky, LLC, stating Mr. James, Mr. Eby, and Mr. Linville would manage the business as members. Mr. Linville provided the operating agreement to BJO. On June 13, 2016, Mr. James sought financing to fund the new business venture, and, in July 2016, loan applications were circulated using the Linville Team's TJI email accounts. The Linville Team also visited BJO headquarters and met with BJO executives while on a trip to Tennessee for TJI business purposes. They also scouted for potential BJO locations in Colorado and Wyoming. TJI's general counsel and CFO reported these findings to TJI's board of directors. The board terminated Mr. James' and Mr. Eby's employment for cause on August 12, 2016, effective immediately.
[¶6] Mr. James and Mr. Eby filed a lawsuit against TJI asserting breach of the employment agreements and seeking damages in excess of $1,000,000 each.[3] TJI moved for summary judgment. On October 30, 2017, the district court granted the motion, finding the employment agreements unambiguously precluded Mr. James and Mr. Eby from forming a new company and seeking other franchise opportunities while still employed as senior executives at TJI. The district court determined the undisputed facts detailing Mr. James' and Mr. Eby's involvement in forming a new company and pursuing other franchise opportunities were sufficient to support their termination even though they never invested any money in Last Bite Jerky, LLC, and the BJO venture never materialized. Mr. James and Mr. Eby timely filed a notice of appeal on November 29, 2017.[4]
STANDARD OF REVIEW
[¶7] We review an order granting summary judgment de novo, giving no deference to the district court's determinations. Lindsey v. Harriet , 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011) (citations omitted). Summary judgment is appropriate when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Id. (citing W.R.C.P. 56(c) ;[5] Snyder v. Lovercheck, 992 P.2d 1079, 1083 (Wyo. 1999) ). "We review a summary judgment in the same light as the district court, using the same materials and following the same standards." Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC , 2014 WY 62, ¶ 12, 327 P.3d 732, 737 (Wyo. 2014) (citations omitted). We examine "the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn" therefrom. Fayard v. Design Comm. of Homestead Subdivision , 2010 WY 51, ¶ 9, 230 P.3d 299, 302 (Wyo. 2010) (citations omitted).
[¶8] "The party requesting summary judgment bears the initial burden of establishing a prima facie case that no genuine issue of material fact exists, and that summary judgment should be granted as a matter of law."
*577 Bogdanski v. Budzik , 2018 WY 7, ¶ 18, 408 P.3d 1156, 1160 (Wyo. 2018) (citations omitted). After making a prima facie showing, the burden shifts to the opposing party to provide "competent evidence admissible at trial showing there are genuine issues of material fact." Jones v. Schabron , 2005 WY 65, ¶ 10, 113 P.3d 34, 37 (Wyo. 2005) (citations omitted); see also Bogdanski , ¶ 18, 408 P.3d at 1160 (citations omitted). "The party opposing the motion must present specific facts; relying on conclusory statements or mere opinion will not satisfy that burden, nor will relying solely upon allegations and pleadings." Bogdanski , ¶ 18, 408 P.3d at 1161 (citations omitted). "A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties." Claman v. Popp , 2012 WY 92, ¶ 21, 279 P.3d 1003, 1011 (Wyo. 2012) (citation omitted).
[¶9] Specific to summary judgment based on contract interpretation,
[t]he initial question of whether the contract is capable of being understood in only one way is a question of law for the court. If the court determines that the contract is capable of being understood in only one way, then the language used in the contract expresses and controls the intent of the parties. In such case, the next question, what is that understanding or meaning, is also a question of law. When we review the district court's summary judgment decisions that a contract is capable of being understood in only one way and what that understanding is, we accord no deference to those decisions.
Leeks Canyon Ranch, LLC , ¶ 12, 327 P.3d at 737 (citation omitted). "If the language is not clear or there are other material issues of fact, summary judgment is not appropriate." Fayard , ¶ 10, 230 P.3d at 302.
DISCUSSION
I. Is TJI entitled to summary judgment because the employment agreements unambiguously prohibited Mr. James and Mr. Eby from forming a new company and seeking other franchise opportunities while employed by TJI?
[¶10] Mr. James and Mr. Eby contend the parties did not intend the employment agreements to restrict Mr. James' and Mr. Eby's activities solely to TJI's business and interests, as the district court determined. They assert the employment agreements are ambiguous and require parol evidence, which the district court refused to consider, to determine the parties' intent. Mr. James and Mr. Eby argue the district court misinterpreted the agreements and reached erroneous conclusions by improperly relying on the "bare words" of Section V, and disregarding the remainder of the contractual language, the circumstances of employment, the customs and practices of TJI, and the directives from the President/CEO. They further argue that the court improvidently granted summary judgment because disputed issues of material fact exist concerning any purported violations of the employment agreements.
A. Contract Interpretation
[¶11] Our "fundamental goal of contract interpretation is to determine the intent of the parties." Pope v. Rosenberg , 2015 WY 142, ¶ 20, 361 P.3d 824, 830 (Wyo. 2015) (citing Whitney Holding Corp. v. Terry, 2012 WY 21, ¶ 36, 270 P.3d 662, 673 (Wyo. 2012) ). "[T]he words used in the contract are afforded the plain meaning that a reasonable person would give to them." Hunter v. Reece , 2011 WY 97, ¶ 17, 253 P.3d 497, 502 (Wyo. 2011) (citation omitted). We employ common sense and "ascribe the words with a rational and reasonable intent." Ultra Res., Inc. v. Hartman , 2010 WY 36, ¶ 22, 226 P.3d 889, 905 (Wyo. 2010).
[¶12] Ambiguity exists where indefiniteness of expression or double meaning obscures the parties' intent. Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC , 2008 WY 69, ¶ 11, 185 P.3d 1259, 1263 (Wyo. 2008) (citation omitted). "[D]isagreement among the parties to a contract as to the contract's meaning does not mean that contract is ambiguous." Claman , ¶ 27, 279 P.3d at 1013 (citation omitted). If the provisions are clear and unambiguous, we discern the parties' intent from the four corners of the document and enforce the contract *578 as written. Id. ¶ 26, 279 P.3d at 1013 (citations omitted). "[W]e interpret [the] contract as a whole, reading each provision in light of all the others to find their plain meaning." Id. ¶ 28, 279 P.3d at 1013 (citations omitted). Further, "[w]e presume each provision in a contract has a purpose, and we avoid interpreting a contract so as to find inconsistent provisions or so as to render any provision meaningless." Id. (citation omitted).
[¶13] Mr. James and Mr. Eby contend the term "all," as used in Section V-Other Employment, is ambiguous because, when given its literal meaning, it prohibits them from shoveling sidewalks or mowing the lawn on Saturdays and attending church on Sundays. They also assert the employment agreements are ambiguous because Section V is inconsistent with Section II-Best Efforts of Employee, which provides:
Employee agrees that he or she at all times will faithfully, industriously and to the best of his (her) ability, experience and talents perform all of the duties that maybe required of and from him (her) pursuant to the express terms of this Agreement to the satisfaction of Employer. Such duties shall be rendered at such place or places as Employer shall in good faith require or as the interest, needs, business opportunity of Employer requires. Employee shall not, directly or indirectly, engage or participate in activities, which are in conflict with the best interests of the Employer.
Mr. James and Mr. Eby further assert the district court erred by failing to consider parol evidence to determine the parties' intent due to the ambiguities existing in the agreements.[6]
[¶14] To the contrary, we conclude the employment agreements unambiguously prohibited Mr. James and Mr. Eby from exploring, forming, or participating in other business ventures not related to TJI. Section V is contained in an "Employment Agreement" under the heading of "Other Employment," and explicitly requires Mr. James and Mr. Eby to "devote all of his (or her) time, attention, knowledge and skills solely to the business and interest of Employer ." Employment Agreements, Section V (emphasis added). In this context, the term "all" is not ambiguous; it clearly refers to Mr. James' and Mr. Eby's business-related activities and cannot be reasonably interpreted to include the personal activities Mr. James and Mr. Eby suggest. See, e.g. , Whitney Holding Corp. , ¶ 14, 270 P.3d at 666 (citation omitted) ("A term is ambiguous if, considered in light of the plain language of the entire contract, it is susceptible to more than one reasonable meaning."); Ultra Res., Inc. , ¶ 22, 226 P.3d at 905 (citations omitted) (explaining that we employ common sense and "ascribe the words with a rational and reasonable intent."). The clear intent and purpose of Section V, as gleaned from the four-corners of the respective agreements, is to require these two top executives to perform work exclusively for TJI and prohibit them from engaging in any other employment or business ventures unrelated to TJI.[7] See *579 Durwood v. Dubinsky , 361 S.W.2d 779, 789-90 (Mo. 1962) (citations omitted) ("As a general proposition, an employee who contracts to devote his entire time, services and efforts to the business of his employer has no right to use a part thereof in an independent business of his own."); see also Asmi v. Nasir , Nos. 316208, 316233, 316234, and 317002, 2014 WL 5690503, at *7-8 (Mich. Ct. App. Nov. 4, 2014) (determining employee's work for another entity constituted a breach of the employment agreement, which required employee to "devote his 'entire time, attention and energies' to his employment ..., and prohibited him from engaging in 'other business or professional activities' " except as otherwise expressly provided); cf. Tejeda v. Toledo Heart Surgeons, Inc. , 186 Ohio App.3d 465, 928 N.E.2d 1138, 1144 (2009) (explaining the employee did not breach the employment agreement because, based on other provisions in the agreement, the provision requiring the employee to "devote his full time, skill, best efforts and attention to all duties hereunder" could not be interpreted to prohibit outside employment).
[¶15] " 'All' means everything," P & N Investments, LLC v. Frontier Mall Assocs., LP , 2017 WY 62, ¶ 17, 395 P.3d 1101, 1105 (Wyo. 2017), and in the context of this case, it means every aspect of Mr. James' and Mr. Eby's business-related time, attention, knowledge, and skills had to be devoted to TJI's interests. The employment agreements at issue provide no exceptions authorizing Mr. James and Mr. Eby to pursue, explore, or engage in business ventures unrelated to TJI, though such terms could have been negotiated and included in the agreements if the parties so intended or desired.[8] We must apply the terms of the employment agreements as written and we cannot write exceptions into the document that do not exist. Comet Energy Servs., LLC , ¶ 11, 185 P.3d at 1263 (quoting Amoco Prod. Co. v. EM Nominee P'ship Co. , 2 P.3d 534, 540 (Wyo. 2000) ) ("[W]e will not 'rewrite contracts under the guise of interpretation, and so long as there is no ambiguity, we are bound to apply contracts as they have been scrivened.' ").
[¶16] Our determination that the employment agreements unambiguously prohibit Mr. James and Mr. Eby from exploring, forming, or participating in other business ventures not related to TJI prohibits consideration of parol evidence. See, e.g. , Ultra Res., Inc. , ¶ 43, 226 P.3d at 909 (citation omitted).
[E]vidence of circumstances surrounding the execution of a contract may always be shown and is always relevant in determining the contracting parties' intent. The term "surrounding circumstances" refers to the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give a context to the transaction between the parties. Parol evidence, on the other hand, is not admissible to establish contracting parties' intent unless the contract itself is ambiguous. "Parol evidence" refers to prior or contemporaneous collateral agreements of the parties or their understanding of what particular terms in their agreement mean.
Wells Fargo Bank Wyoming, N.A. v. Hodder , 2006 WY 128, ¶ 31 n.5, 144 P.3d 401, 412 n.5 (Wyo. 2006) (citing Hickman v. Groves , 2003 WY 76, ¶ 11, 71 P.3d 256, 259-60 (Wyo. 2003) ). "[T]he function of the parol evidence rule is to prevent parties from supplementing or contradicting the terms of the contract." Mullinnix LLC v. HKB Royalty Tr. , 2006 WY 14, ¶ 25, 126 P.3d 909, 920 (Wyo. 2006) (citations omitted). Mr. James and Mr. Eby submitted evidence purporting to demonstrate they did not intend to restrict their business activities to TJI's business and interest. "[E]vidence of the parties' subjective intent is not relevant or admissible in interpreting a contract[,]" Claman , ¶ 27, 279 P.3d at 1013, and it is inappropriate to consider such parol evidence, where, as here, the contract is unambiguous.
*580 B. Absence of Genuine Issues of Material Fact
[¶17] Having determined the employment agreements unambiguously prohibited Mr. James and Mr. Eby from forming a new company and seeking other franchise opportunities while employed by TJI (e.g., devoting time, attention, knowledge, and skills to business ventures other than TJI), we next review whether genuine issues of material fact exist regarding whether Mr. James and Mr. Eby breached their agreements.
[¶18] TJI submitted evidence in support of summary judgment detailing Mr. James' and Mr. Eby's efforts in forming a new company and pursing the BJO venture while still employed as top executives for TJI: they engaged in conference calls, reviewed a webinar, scouted real estate, explored financing options and circulated loan documents for the BJO project, helped create and register a limited liability company for the BJO venture, and drafted a business plan and operating agreement, inter alia . Many of these activities occurred using TJI resources and during TJI business hours. These facts establish that Mr. James and Mr. Eby expended time, attention, knowledge, and skills to business activities unrelated to TJI's business and interests, and thus, satisfied TJI's burden to present a prima facie showing that Mr. James and Mr. Eby violated Section V of their respective employment agreements.
[¶19] The burden consequently shifted to Mr. James and Mr. Eby to come forward with competent, admissible evidence disputing TJI's evidence and demonstrating the existence of a genuine issue of material fact requiring a trial to determine whether a breach occurred. See Hatton v. Energy Elec. Co. , 2006 WY 151, ¶ 9, 148 P.3d 8, 12-13 (Wyo. 2006) (citations omitted). Mr. James and Mr. Eby failed to satisfy their burden. Instead, they baldly asserted TJI's facts were merely introductory statements, were misstatements or partial statements, or were disputed facts, without reference to any supporting evidence. Bald assertions and conclusory statements are insufficient to establish a genuine issue of material fact. In re Estate of McLean , 2004 WY 126, ¶ 15, 99 P.3d 999, 1005 (Wyo. 2004) (citations omitted) (explaining "conclusory statements, mere opinions, or categorical assertions of ultimate facts without supporting evidence are insufficient to establish some disputed issue of material fact.").
[¶20] Mr. James and Mr. Eby further opposed TJI's motion for summary judgment by arguing the following additional facts were material and in dispute:
1. The Tennessee trip was for TJI business;
2. The proposed BJO project never materialized;
3. Mr. Linville's employment agreement allowed the BJO project, was approved at the time of hiring Mr. Eby, and was approved by TJI's compensation committee;
4. Mr. James' and Mr. Eby's participation in the BJO project was authorized by Mr. Linville in his capacity as TJI's President/CEO;[9]
5. The Tennessee trip expense reports were proper and true.
These additional facts are not material because they in no way refute the material facts TJI relied on to show Mr. James and Mr. Eby devoted time, attention, knowledge, and skill to the BJO venture in violation of Section V of the employment agreements with TJI. The employment agreements permit termination for cause for "any violation" of "any of the terms" of the agreements. Employment Agreements, Section XII(B) (emphasis added). It is immaterial whether the purpose of the Tennessee trip was for TJI business and whether the associated expense reports were proper and true in light of the other undisputed evidence demonstrating violations of Section V.
[¶21] It is also immaterial that the BJO project never materialized after Mr. James' and Mr. Eby's termination because the formation of a new entity and the initial steps taken towards acquiring a business unrelated *581 to TJI, alone, constitute a violation of Section V. The employment agreements required Mr. James and Mr. Eby to devote all of their time and attention to TJI business-not to an unrelated business venture. The agreements do not require that the unrelated business venture be successful or that Mr. James and Mr. Eby receive compensation from the unrelated venture before a violation of Section V occurs.
[¶22] The evidence suggesting Mr. Linville's employment agreement, which permitted the BJO project, "was approved at the time of hiring [Mr.] Eby, and was approved by the Board's Compensation Committee," even if true, is immaterial because, as previously discussed, Mr. James' and Mr. Eby's agreements provided no such exception. To the extent Mr. Linville's agreement is offered as evidence of an implied intent to allow a similar exception to Section V in Mr. James' and Mr. Eby's agreements, it constitutes parol evidence, which is inadmissible and cannot be considered. See, e.g. , Ultra Res., Inc. , ¶ 43, 226 P.3d at 909 (citation omitted). Further, Mr. Eby's contention that outside business ventures were approved at the time he was hired contradicts the express language of his employment agreement's integration clause.[10] The terms and timing of approval of Mr. Linville's agreement with TJI are not material. See, e.g. , Johnson v. Soulis , 542 P.2d 867, 873 (Wyo. 1975) (explaining that "when the parties have effected an integration of their agreement other evidence is not relevant if its sole purpose is to alter the terms of the integrated agreement. ..."); Rehnberg v. Hirshberg , 2003 WY 21, ¶ 16, 64 P.3d 115, 119 (Wyo. 2003) ("The integration clause clearly established the parties' intent that the written terms contain their entire agreement, which is not to be modified by prior negotiations.").
[¶23] Because the facts Mr. James and Mr. Eby rely on, even if proven, do not establish or refute an essential element of their claims or TJI's defenses, they failed to meet their burden of showing a genuine issue of material fact exists to preclude summary judgment. The undisputed facts reflect that Mr. James and Mr. Eby violated Section V of their employment agreements and support a judgment as a matter of law that TJI properly terminated Mr. James and Mr. Eby for cause.
II. Did TJI's President and Chief Executive Officer (CEO) have apparent authority to allow Mr. James' and Mr. Eby's participation in a business venture unrelated to TJI and contrary to the terms of their employment agreements?
[¶24] Mr. James and Mr. Eby contend Mr. Linville, as President/CEO of TJI, represented the compensation committee was comfortable with their plan to invest in the BJO venture, and, therefore, authorized their participation in the BJO project. They argue the doctrine of apparent authority bound TJI to Mr. Linville's acts and, thus, TJI could not properly terminate Mr. James and Mr. Eby for cause relating to the BJO business venture.
[¶25] "Apparent authority is created when the principal holds the agent out as possessing the authority to bind the principal or when the principal allows the agent to claim such authority." Cargill, Inc. v. Mountain Cement Co. , 891 P.2d 57, 62 (Wyo. 1995) (citation omitted). A principal may be bound under a theory of apparent authority if a third party establishes "personal knowledge of, and reliance on, the apparent authority of the agent." Id. Apparent authority in agency cases is determined by a two-prong test requiring a third party to establish: "(1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question, and (2) the third party reasonably relied on the representations of the agent." Id. (citations and internal quotation marks omitted).
[¶26] Mr. James and Mr. Eby acknowledge their burden to establish that "TJI was responsible for the appearance of authority in *582 Linville to conduct the transaction in question; and James and Eby reasonably relied on the representations of Linville." They contend the first prong of the two-part test is satisfied because Mr. Linville "was the highest ranking official of TJI." They further contend Mr. Linville's authority was reasonably inferred because he remained the CEO while also participating in the BJO project. However, Mr. James and Mr. Eby do not address whether they reasonably relied on Mr. Linville's representations.
[¶27] In contrast, TJI does not appear to dispute its responsibility for the appearance of Mr. Linville's authority, but instead asserts Mr. James and Mr. Eby cannot establish reasonable reliance as a matter of law because the employment agreements restrict their participation in other business ventures and require modifications be in writing and signed by both parties. TJI supports its position with our holding from Loghry v. Unicover Corp. , 927 P.2d 706 (Wyo. 1996), abrogated on other grounds by Scherer Const., LLC v. Hedquist Const., Inc. , 2001 WY 23, 18 P.3d 645 (Wyo. 2001).
[¶28] In Loghry , Unicover terminated the plaintiff's employment after she provided files to the vice president of Unicover's sister corporation (vice president) during the vice president's investigation of the plaintiff's supervisor. Id. at 708-09. The plaintiff provided the files after the vice president assured her she would not lose her job if she cooperated. Id. at 709. The plaintiff filed suit asserting promissory estoppel, inter alia . Id. The district court granted summary judgment, finding disclaimers contained in the employment documents defeated the promissory estoppel claim because only the president of Unicover could enter an employment agreement for a specified time and only the board of directors could waive or modify the conditions of employment. Id. at 709-10. On appeal, we upheld the district court's order, explaining the written, at-will employment contract "eliminated the apparent authority of lower level employees to make promises of job security and which required modification of the contract be in writing by the president of the company." Id. at 710-11. We also stated, "By utilizing these legally effective disclaimers, Unicover did not induce any reasonable expectations of job security and did not give employees any reason to rely on representations of the manual or oral representations of unauthorized employees." Id. at 710.
[¶29] Our reasoning in Loghry is applicable here. Mr. James and Mr. Eby read and signed their respective employment agreements requiring them to devote all of their time, attention, knowledge and skills to TJI's business and interests. Employment Agreements, Section V. The employment agreements also contain a written modification clause stating: "This Agreement shall be modified only by a written agreement, duly executed by both parties." Employment Agreements, Section XVII. Assuming Mr. Linville orally authorized Mr. James' and Mr. Eby's participation in the BJO project, such authorization was contrary to these express contract terms. As with the disclaimers in Loghry , by including the written modification clause in Mr. James' and Mr. Eby's employment agreements, TJI did not induce any reasonable expectations of other employment exceptions and did not give Mr. James and Mr. Eby any reason to rely on any oral representations of Mr. Linville to the contrary. Accordingly, any reliance on Mr. Linville's oral authorization for Mr. James and Mr. Eby to participate in the BJO venture was unreasonable as a matter of law. See Chavez v. Manville Prod. Corp. , 108 N.M. 643, 777 P.2d 371, 374 (1989) (holding that it was unreasonable as a matter of law for the plaintiff to change his position in reliance on oral representations contrary to an express term of an employment contract, which required written modifications; reasoning that any other conclusion would require rewriting the terms of the parties' contract).
CONCLUSION
[¶30] The employment agreements unambiguously prohibited Mr. James and Mr. Eby from exploring, forming, or participating in other business ventures not related to TJI. The district court properly refused to consider parol evidence to interpret the unambiguous agreements. Mr. James and Mr. Eby failed to demonstrate the existence of any genuine issue of material fact requiring a *583 trial. Instead, the undisputed facts show Mr. James and Mr. Eby breached the employment agreements by forming a new company while still employed as senior executives at TJI and pursing a franchise opportunity unrelated to TJI. Mr. James' and Mr. Eby's reliance on any oral authorization by Mr. Linville to participate in the BJO venture was unreasonable as a matter of law. Consequently, TJI properly terminated Mr. James' and Mr. Eby's employment for cause. For these reasons, we affirm the district court's order granting summary judgment.

TJI offers alternative grounds for upholding summary judgment and, alternatively, requests we limit available damages on remand. Because we affirm summary judgment on the same grounds as the district court, we do not consider TJI's additional issues.

The employment agreements permit termination without cause and without advance notice; however, severance pay is required if termination occurs without cause with less than two weeks' notice. Employment Agreements, Section XII (B).

Mr. Linville also sued TJI, but later dismissed his claims. Thereafter, Mr. James and Mr. Eby amended the complaint to omit references to Mr. Linville. The district court treated their cause of action against TJI as a breach of contract and not wrongful termination, as pled in the amended complaint. Mr. James and Mr. Eby did not contest the district court's characterization of their claim. Mr. James and Mr. Eby also sued TJI's general counsel and CFO for defamation but did not appeal the order granting summary judgment to defendants on that claim.

Prior to filing the notice of appeal, Mr. James and Mr. Eby moved the court to vacate its order granting summary judgment pursuant to W.R.C.P. 59(a)(1)(F). The district court summarily denied the motion on December 21, 2017.

This rule was amended in 2017, and the cited language now appears at W.R.C.P. 56(a).

In addition, Mr. James and Mr. Eby assert the employment agreements are ambiguous because the term "Employer" is defined as "TJI as a corporation" and does not include TJI's board of directors. Consequently, they argue the board lacked authority to terminate them for cause. This argument is specious. Pursuant to Wyo. Stat. Ann. § 17-16-801(b) (Lexis Nexis 2017), "[a]ll corporate powers shall be exercised by or under the authority of the board of directors of the corporation" and the board's authority is deemed an incorporated term in the employment agreements. See also Century Ready-Mix Co. v. Lower & Co ., 770 P.2d 692, 696 (Wyo. 1989) (citations omitted) ("We have recognized that statutory provisions become a part of the bargain contemplated by the parties in Wyoming as though the statute actually were included in the terms.").

We considered Mr. James' and Mr. Eby's vague assertion that Section V is ambiguous because it is inconsistent with Section II. Seeing no inherent inconsistency between Section II-Best Efforts of Employee and Section V-Other Employment, and because Mr. James and Mr. Eby failed to develop or otherwise provide a cogent argument or citation to relevant authority concerning the alleged conflict, we decline to further address this contention. See Willey v. Willey , 2016 WY 116, ¶ 30, 385 P.3d 290, 299-300 (Wyo. 2016) (citing Hamburg v. Heilbrun , 889 P.2d 967, 968 (Wyo. 1995) ) (declining to consider an issue that was vague, undefined and to the extent it could be deciphered, it was unsupported by cogent argument or authority).

This point is bolstered by Mr. James' and Mr. Eby's reference to Mr. Linville's employment agreement, which they contend authorizes Mr. Linville to invest in non-competing businesses, including becoming a franchisee. See also Asmi v. Nasir , supra , (parties negotiated exceptions to contract provision prohibiting outside business and professional activities).

Mr. James' and Mr. Eby's contention that Mr. Linville, as President/CEO, authorized their participation in the BJO project is discussed in Issue II below.

The integration clause provides: "This Agreement supersedes all previous correspondence, promises, representations and agreements, if any, whether oral or written and constitutes the entire agreement between the parties with respect to the subject matter thereof." Employment Agreements, Section XVIII.