2018 WY 7

**Mariusz BOGDANSKI, Appellant (Plaintiff),**

v.

**Damian BUDZIK, Appellee (Defendant).**

**Mariusz Bogdanski, Appellant (Plaintiff),**

v.

**FedEx Ground Package System, Inc., Appellee (Defendant).**

**S-17-0049**
**S-17-0050**

Supreme Court of Wyoming.

January 24, 2018

Representing Appellant: Collin C. Hopkins of The Law Offices of Collin Hopkins, P.C., Riverton, WY *; Milo W. Lundblad and Jerome A. Urbik of Brustin & Lundblad, Ltd., Chicago, IL; and Cameron S. Walker of Schwartz, Bon, Walker & Studer, LLC, Casper, WY. Argument by Mr. Urbik.

Representing Appellee: Paul Kapp and Patrick M. Brady of Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, WY. Argument by Mr. Kapp.

* Order Allowing Withdrawal of Counsel entered on August 14, 2017.

1. As discussed below, Bogdanski did not challenge the grant of summary judgment to Budzik

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

DAVIS, Justice.

[¶1] Mariusz Bogdanski and Damian Budzik were codrivers of a commercial semi-truck that was involved in an accident on Interstate 80 east of Evanston, Wyoming. Bogdanski was injured in the accident and filed an action against Budzik, alleging that his negligence caused the accident. He also sued FedEx Ground Package System, Inc. (FedEx), the company whose trailers they were hauling, alleging both direct negligence and vicarious liability for Budzik's negligence. The district court granted summary judgment to both Budzik and FedEx, and Bogdanski appeals the order in favor of FedEx. We affirm summary judgment in favor of Appellee Budzik, and the summary judgment on Bogdanski's direct negligent training claim. However, we reverse the ruling granting summary judgment against FedEx on Bogdanski's claim of vicarious liability for Budzik's claimed negligence, and we remand to the district court for further proceedings.

## ISSUES

[¶2] We restate the issues raised by this appeal as follows:[1]

1. Can Bogdanski maintain a direct negligence claim in addition to a vicarious liability claim when FedEx has stipulated that it will be vicariously liable for Budzik's negligence, if any?

2. Did the district court err in granting FedEx's motion for summary judgment on Bogdanski's vicarious liability claim?

## FACTS

[¶3] In February of 2011, Mariusz Bogdanski and Damian Budzik were employed as commercial truck drivers by BZ Trucking, Inc., a company operating out of Burbank, Illinois. Bogdanski was the more experienced driver and began working for BZ Trucking in 2005. Damian Budzik obtained his commer-

in his briefing, and we have therefore identified no issue relating to it.

cial driver's license in 2008 and began working for BZ Trucking that same year.

[¶4] For the first year of Budzik's employment with BZ Trucking, he was provided on-the-job training by being paired with more experienced drivers. Budzik was paired with one driver for the first three months of his training, and then with Bogdanski for the remainder of the year. After Budzik completed his year of training, he and Bogdanski remained driving partners.

[¶5] In 2011 BZ Trucking had a contract with FedEx to use BZ's trucks and drivers to haul FedEx trailers. Pursuant to that contract, Budzik and Bogdanski picked up two FedEx trailers in Bedford, Illinois to be delivered to Sacramento, California, on February 16, 2011. The trip was to be non-stop with Bogdanski and Budzik each driving alternating eleven-hour shifts. A shift change occurred at about 2:00 a.m. on February 17th in Rawlins, Wyoming. Budzik completed an inspection of the tractor and trailers, and then took over driving while Bogdanski rested in the truck's sleeper compartment.

[¶6] When Budzik began his driving shift in Rawlins, it was snowing, but not heavily. As Budzik continued to drive west on Interstate 80, it began to snow more heavily, reaching what Budzik described as a six out of ten in severity, with snow accumulating on the road's surface. About thirty miles east of Evanston, Wyoming, Budzik came upon traffic stopped in both westbound lanes. He was driving approximately forty-five to fifty miles per hour when he encountered the stopped traffic, and he activated his flashers and pulled from the right lane into the left to allow a greater distance over which to stop the truck.

[¶7] The traffic ahead of Budzik remained stopped for around five to ten minutes. When the traffic began to move again, Budzik found that he could not get his truck to move. He tried for about one to two minutes to get it moving and then woke Bogdanski to ask for help. Bogdanski described what happened next:

> Q. So he woke you up. Did he want you to do something? What did he want you to do?

> A. He needed my help.

> Q. Did you—to do what?

> A. Just to—we were—we work in a team, so I needed to sit down and decide what is going to be our next step.

> Q. And did you do that?

> A. Yes. We were going to inspect the truck to see why the truck is not able to move forward.

> Q. So after he woke you up and you got out of the sleeper compartment, from there, where did you go?

> A. It was wintertime, so I needed also some time to dress myself properly. I went out, exited.

> * * *

> Q. So I take it, somehow it was decided that you had to go out?

> A. That period of time, Damian was assigned to be a driver. I went—when one is assigned, the other one did not take over and sit back behind the wheel.

> Q. Because of the hour restrictions, right?

> A. Yes. So I was off duty.

> Q. So the plan was that you were going to go out of the truck and try and figure out why you were not getting traction?

> A. Basically, I also was at that point more experienced than Damian. I wanted to go outside and look around the truck and—trying to figure out why the truck can't move forward.

[¶8] When Bogdanski exited the truck, he found all of the truck and trailer exterior lights were on, including the emergency lights, the pulsating lights, and the headlights. He inspected the entire exterior of the truck and trailers and confirmed that the only problem was that the driver wheels were spinning. He then concluded they would need to place chains on some of the tires to get the truck moving and that they would also need to place warning triangles to secure the truck's location.

[¶9] The chains and warning triangles were kept on a catwalk between the tractor and the trailers, and Bogdanski climbed onto the catwalk to get them. While Bogdanski was on the catwalk, another commercial truck driven

by Viktor Marinov rear-ended the stopped tractor-trailer. The impact threw Bogdanski from the catwalk, and he landed on the shoulder of the road. He was taken by ambulance to a hospital in Evanston, Wyoming, where he was treated and released. The next day he and Budzik drove the truck, without trailers, first to Salt Lake City and then back to Illinois. Upon his return to Illinois, Bogdanski applied for and received Illinois workers' compensation medical and disability benefits for injuries to his right shoulder, right hip, cervical spine, lumbar spine, and left arm.

[¶10] In February of 2013, Bogdanski filed an action in the Superior Court of California, Sacramento County, against Viktor Marinov, the driver of the other truck involved in the accident, as well as a number of parties associated with Marinov. On February 10, 2015, Bogdanski filed a complaint in the Third Judicial District, Uinta County, Wyoming, against many of the same parties named in the California action, and added Budzik and FedEx.[2] Bogdanski's claims against FedEx included direct negligence and vicarious liability for Budzik's alleged negligence.[3] In the count concerning FedEx's vicarious liability, the complaint alleged that Budzik "carelessly and negligently":

a. Negligently drove on roads in weather conditions that made it highly probable that his truck would become stranded on the highway;

b. Failed to pull onto the shoulder when it became apparent that heavy traffic and road conditions were going to force him to stop his truck and become stranded on the highway;

c. Failed to heed mandatory tire chain requirements; and

d. Failed to activate his lights and/or emergency flashers so as to be visible to other vehicles on the highway.

[¶11] Bogdanski's claim against Budzik was for negligence. In that count, the complaint alleged Budzik "carelessly and negligently":

a. Failed to pull on to the shoulder when traffic stopped;

b. Failed to drive in the right lane;

c. As Mr. Marinov testified, failed to turn on his lights and/or emergency flashers to warn other vehicles on the highway that he was stranded;

d. Negligently attempted to continue driving on terrain and in weather conditions that made for reduced traction; and

e. Failed to utilize traction aids to prevent his truck from becoming stranded.

[¶12] On May 11, 2015, FedEx filed a written stipulation in which it agreed to be responsible for Budzik's negligence, if any such negligence were found. The stipulation stated:

1. On February 17, 2011, Damian Budzik was employed by BZ Trucking, Inc., an independent contractor who provides services to FedEx Ground. Mr. Budzik was driving a tractor with plate number 1000349 (State of Indiana), and that tractor was at the location of the accident that is the subject of the *Complaint* . . . .

2. If the vehicle is found to have been negligently operated while performing actions within the scope of the agency relationship between FedEx Ground and Damian Budzik, FedEx Ground agrees to be responsible for any such negligence.

3. This stipulation will not be shown or read to the jury.

[¶13] On August 1, 2016, Budzik filed a motion for summary judgment, asserting that he was entitled to coemployee immunity because Bogdanski had received workers' compensation benefits for his injuries. Bogdanski opposed the motion. He asserted the evidence showed Budzik was not entitled to immunity because he engaged in willful and wanton misconduct by driving in a snowstorm at night and by getting the truck stuck.

---

2. Because of the duplicate action pending against the Marinov parties in California, the district court dismissed all defendants from the Wyoming action except Budzik and FedEx. That decision was not appealed.

3. On appeal, the direct negligence claim at issue against FedEx is a claim for negligent training.

[¶14] On October 14, 2016, FedEx filed its own motion for summary judgment asserting multiple grounds on which it was entitled to judgment as a matter of law. FedEx urged the district court to hold that a plaintiff may not proceed against a principal on independent negligence theories of negligent hiring or training after the principal has admitted vicarious liability.[4] FedEx also asserted that there were no facts in the record showing that either FedEx or Budzik breached a duty of care or that their actions proximately caused Bogdanski's injuries. Finally, FedEx argued Bogdanski could not recover from it on a vicarious liability claim because his claims against Budzik were barred by coemployee immunity under the applicable workers' compensation law.[5]

[¶15] On December 1, 2016, the district court entered an order granting Budzik's summary judgment motion. It found that Bogdanski's coemployee claims against Budzik were barred because of his receipt of workers' compensation benefits, and that this was true regardless of whether the court applied Wyoming or Illinois workers' compensation law.

[¶16] On the same date, the district court entered an order granting FedEx's summary judgment motion. The court concluded that Wyoming would adopt the *McHaffie* rule, and on that basis ruled that FedEx was entitled to judgment as a matter of law on Bogdanski's negligent training claim. With respect to the remaining vicarious liability claims, the court found the opinions of Bogdanski's expert to be based on speculation, and it concluded that Bogdanski had failed to oppose FedEx's motion with evidence showing any issue of material fact.

[¶17] Bogdanski filed a timely notice of appeal from the district court's order granting the FedEx summary judgment motion.[6]

---

**4.** This rule is known and referred to on appeal as the *"McHaffie* rule." *See Ferrer v. Okbamicael,* 390 P.3d 836, 842-44 (Colo. 2017) (recognizing *McHaffie v. Bunch,* 891 S.W.2d 822 (Mo. 1995), as most frequently cited case articulating rule).

**5.** The district court did not rule on this last ground or address it, and neither party has raised it on appeal, so we will not consider it further.

## STANDARD OF REVIEW

[¶18] Our standard of review on summary judgment has been stated often and consistently:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Gayhart v. Goody,* 2004 WY 112, ¶ 11, 98 P.3d 164, 168 (Wyo. 2004). Summary judgment is proper only when there are no genuine issues of material fact, and the prevailing party is entitled to judgment as a matter of law. *Id.* Summary judgments are not favored in negligent actions. *Cook v. Shoshone First Bank,* 2006 WY 13, ¶ 12, 126 P.3d 886, 889 (Wyo. 2006). However, summary judgments have been upheld in negligence cases where the record did not establish a genuine issue of material fact. *Id.*

*Uinta County v. Pennington,* 2012 WY 129, ¶ 11, 286 P.3d 138, 141-42 (Wyo. 2012).

> The party requesting summary judgment bears the initial burden of establishing a prima facie case that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. W.R.C.P. 56(c); *Throckmartin v. Century 21 Top Realty,* 2010 WY 23, ¶ 12, 226 P.3d 793, 798 (Wyo. 2010). Until the movant has made a prima facie showing that there are no genuine issues of material fact, the nonmovant has no obligation to respond to the motion with materials beyond the pleadings. *Id.*

> Once a prima facie showing is made, the burden shifts to the party opposing the motion to present evidence showing that there are genuine issues of material fact. *Boehm v. Cody Cntry. Chamber of*

---

**6.** Bogdanski also filed a timely notice of appeal from the district court's order granting Budzik's summary judgment, but in his briefing, he informed this Court that he does not wish to challenge that order. We therefore confine our review to the FedEx order and summarily affirm the order granting Budzik's summary judgment motion.

*Commerce*, 748 P.2d 704, 710 (Wyo. 1987) (citing *England v. Simmons*, 728 P.2d 1137, 1140-41 (Wyo. 1986)). The party opposing the motion must present specific facts; relying on conclusory statements or mere opinion will not satisfy that burden, nor will relying solely upon allegations and pleadings. *Boehm*, 748 P.2d at 710. However, the facts presented are considered from the vantage point most favorable to the party opposing the motion, and that party is given the benefit of all favorable inferences that may fairly be drawn from the record. [*Union Pacific R. Co. v.*] *Caballo Coal Co.*, ¶ 12, 246 P.3d [867] at 871 [ (Wyo. 2011) ].

Summary judgments are not favored in negligence actions and are subject to exacting scrutiny. *Erpelding v. Lisek*, 2003 WY 80, ¶ 10, 71 P.3d 754, 757 (Wyo. 2003). However, even in negligence actions, "where the record fails to establish an issue of material fact, [and when the movant is entitled to judgment as a matter of law], the entry of summary judgment is proper." *Allmaras v. Mudge*, 820 P.2d 533, 536 (Wyo. 1991) (alteration in original) (citing *MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo. 1990)). *Johnson v. Dale C.*, 2015 WY 42, ¶¶ 12-15, 345 P.3d 883, 886-87 (Wyo. 2015).

*Amos v. Lincoln Cty. Sch. Dist. No. 2*, 2015 WY 115, ¶ 15, 359 P.3d 954, 958-59 (Wyo. 2015). This Court affords no deference to the district court's ruling, but instead reviews a "summary judgment in the same light as the district court, using the same materials and following the same standards." *Hurst v. Metropolitan Prop. & Cas. Ins. Co.*, 2017 WY 104, ¶ 8, 401 P.3d 891, 895 (Wyo. 2017) (quoting *Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011)).

## DISCUSSION

### A. Direct Negligence Claims against FedEx

■ [¶19] The district court granted FedEx summary judgment on Bogdanski's claim of negligent training on the basis of the *McHaffie* rule. The *McHaffie* rule has been stated as follows: "[O]nce an employer admits respondeat superior liability for a driver's negligence, it is improper to allow a plaintiff to proceed against the employer on other theories of imputed liability." *Ferrer*, 390 P.3d at 843. This rule was first adopted by the Maryland Court of Appeals in 1951. *Houlihan v. McCall*, 197 Md. 130, 78 A.2d 661, 665 (1951). Since then it has been applied by the Supreme Courts of California, Missouri, Arkansas, Idaho, and Colorado, as well as intermediate appellate courts in Florida, Illinois, Texas, and New York.[7][8]

[¶20] The district court explained its decision as follows:

Bogdanski asserts that FedEx was negligent in training Budzik, which resulted in the injuries suffered by Bogdanski. Wyoming has not ruled on whether an injured party has a claim of negligent training; however, the majority rule is that claims for negligent training are simply an effort to hold the principal liable for the negligence of its agent. The Federal District

---

7. California: *Armenta v. Churchill*, 42 Cal.2d 448, 267 P.2d 303, 309 (1954); *accord Diaz v. Carcamo*, 51 Cal.4th 1148, 126 Cal.Rptr.3d 443, 253 P.3d 535, 544 (2011). Missouri: *McHaffie*, 891 S.W.2d at 826. Arkansas: *Elrod v. G & R Constr. Co.*, 275 Ark. 151, 628 S.W.2d 17, 19 (1982). Idaho: *Wise v. Fiberglass Sys.*, 718 P.2d 1178, 1182 (Id. 1986). Colorado: *Ferrer*, ¶ 26, 390 P.3d at 844. Florida: *Clooney v. Geeting*, 352 So.2d 1216, 1220 (Fla. App. 1977). Illinois: *Gant v. L.U. Transp.*, 331 Ill.App.3d 924, 264 Ill.Dec. 459, 770 N.E.2d 1155, 1159 (2002). Texas: *Rodgers v. McFarland*, 402 S.W.2d 208, 210 (Tex. Civ. App. 1966). New York: *Karoon v. New York City Transit Auth.*, 241 A.D.2d 323, 324, 659 N.Y.S.2d 27 (1997).

8. There is a minority rule which holds that a negligent hiring, training, retention, or supervision claim is an independent cause of action which should be allowed to stand regardless of an admission of vicarious liability for an employee's negligent actions. *See, e.g., Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 961 P.2d 1213, 1222 (1998); *Perin v. Peuler*, 373 Mich. 531, 130 N.W.2d 4 (1964); *Clark v. Stewart*, 126 Ohio St. 263, 185 N.E. 71 (1933); *James v. Kelly Trucking Co.*, 377 S.C. 628, 661 S.E.2d 329 (2008). These cases were cited in *Sanchez v. Home Depot, Inc.*, No. 1:13-CV-00117-ABJ, 2014 WL 2986672, at *3 (D. Wyo. July 2, 2014), a Federal District Court decision correctly predicting that this Court would follow the majority rule.

Court for the District of Wyoming has held:

> First of all, the Court notes that this legal issue has not been directly addressed by the Wyoming Supreme Court. The majority of jurisdictions which have considered this issue have determined that it is improper to allow a plaintiff to proceed against [a principal] on the independent negligence theories of negligent entrustment and negligent hiring or training after the principal has already admitted liability under the doctrine of *respondeat superior*.

*Sanchez v. Home Depot, Inc.*, No. 1:13-CV-00117-ABJ, 2014 WL 2986672, at *3 (D. Wyo. July 2, 2014) (unpublished disposition) (citation & quotations omitted) (alteration & emphasis in original). The *Sanchez* court held the Wyoming Supreme Court would adopt the majority rule. *Id.* at *4. In support of this conclusion the *Sanchez* court found, "[T]he Wyoming Supreme Court has indirectly touched on this issue in *Beavis ex rel. Beavis v. Campbell County Memorial Hospital*, 20 P.3d 508 (Wyo. 2001)." *Id.* at *3. This Court agrees with *Sanchez* and adopts the majority rule that Bogdanski's claims for negligent hiring, training, and supervision cannot be maintained when vicarious liability has been accepted by FedEx. *Id.*

[¶21] Bogdanski contends that the district court erred in adopting and applying the *McHaffie* rule, arguing that it only applies where liability is asserted on the basis of an employment relationship. He points out that any duty FedEx has arises from 49 C.F.R. § 390.11, which imposes a duty on motor carriers like FedEx to ensure that its contractors' drivers obey federal safety rules.[9]

This separate duty is important because it means that, unlike in *Beavis*, the chain of proximate causation is not necessarily severed by a finding that Budzik was not personally negligent. This is because FedEx's duty was not to exercise reasonable care to make sure Budzik exercises reasonable care. It was to ensure that Budzik followed specific, federally prescribed protocols for certain situations, the non-observance of which could be, and, in fact, were the proximate cause of Appellant's injuries. Thus if FedEx breached this duty, its breach could be a proximate cause of Appellant's injuries even if Budzik's failure to follow these federal protocols was not, from his perspective, negligent.

[¶22] This is a distinction without a difference. Apparently based on the regulation identified above, FedEx decided to stipulate to liability for Budzik's negligence, if any. If Bogdanski can prove that Budzik was negligent, and that his negligence caused Bogdanski's injury, he will be entitled to recover the same damages that he would under the direct negligence theory.[10] We have previously held that a party can only recover for a negligent failure to train or supervise if the person alleged to have been improperly trained or supervised was negligent. *Beavis v. Campbell Cty. Mem'l Hosp.*, 2001 WY 32, ¶¶ 19-20, 20 P.3d 508, 515-16 (Wyo. 2001). All roads lead to Rome in a case such as this. As the Colorado Supreme Court has ably explained:

> But where the employer has already conceded it is subject to respondeat superior liability for any negligence of its employee, direct negligence claims become superfluous. Importantly, to prevail on direct negligence claims against the employer, a plaintiff still must prove that the employee engaged in tortious conduct. That is, tortious conduct by an employee is a predicate in direct negligence claims against the employer. *See, e.g., Raleigh v.*

---

9. "Whenever in part 325 of subchapter A or in this subchapter a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition." 49 C.F.R. § 390.11. Although it is not a model of clarity, the parties seem to agree that this regulation requires motor carriers like FedEx to assure that its subcontractors' drivers are properly trained.

10. Perhaps there might be a case in which the negligent failure-to-train theory could be claimed to be sufficient to support an award of punitive damages. We need not address that speculative possibility as no such claim was made in this case.

*Performance Plumbing & Heating, Inc.,* 130 P.3d 1011, 1016 (Colo. 2006) (in negligent hiring cases, the employee's "intentional or non-intentional tort is the predicate for the plaintiff's action against the employer, so proof in the case involves both the employer's and the employee's tortious conduct"); *McHaffie,* 891 S.W.2d at 825 (elements of negligent entrustment include proof that "the negligence of the entrustor concurred with the negligence of the entrustee to harm the plaintiff"); *Rodgers v. McFarland,* 402 S.W.2d 208, 210 (Tex. App. 1966) (in a negligent entrustment action, "[t]he driver's wrong ... first must be established, then by negligent entrustment liability for such wrong is passed on to the owner"). Direct negligence claims effectively impute the employee's liability for his negligent conduct to the employer, similar to vicarious liability.

An employer's negligent act in hiring, supervision and retention, or entrustment is not a wholly independent cause of the plaintiff's injuries, unconnected to the employee's negligence. A plaintiff has no cause of action against the employer for negligent hiring, for example, unless and until the employee's own negligence causes an accident.

Stated differently, both vicarious liability and direct negligence claims are tethered to the employee's tortious acts. "Derivative or dependent liability means that one element of imposing liability on the employer is a finding of some level of culpability by the employee in causing injury to a third party." *McHaffie,* 891 S.W.2d at 825. As one court explained:

> Under either theory, the liability of the principal is dependent on the negligence of the agent. If it is not disputed that the employee's negligence is to be imputed to the employer, there is no need to prove that the employer is liable. Once the principal has admitted its liability under a respondeat superior theory ... the cause of action for negligent entrustment is duplicative and unnecessary. To allow both causes of action to stand would allow a jury to assess or apportion a principal's liability twice.

*Gant v. L.U. Transp., Inc.,* 331 Ill.App.3d 924, 264 Ill.Dec. 459, 770 N.E.2d 1155, 1160 (2002).

*Ferrer,* 390 P.3d at 844-45.

[¶23] The majority rule is consistent with our comparative fault scheme. Both FedEx and Budzik would have to be listed on the form for allocation of fault if the direct negligence claim against FedEx was tried, which could lead to a double allocation. This possibility is best illustrated by the case of *Diaz v. Carcamo,* 51 Cal.4th 1148, 126 Cal.Rptr.3d 443, 253 P.3d 535 (2011). A vehicle driven by defendant Tagliaferri collided with a semi-truck driven by defendant Carcamo while Carcamo was in the scope of his employment with Sugar Transport. *Id.,* 126 Cal.Rptr.3d 443, 253 P.3d at 538. The collision caused Tagliaferri's vehicle to collide with plaintiff Diaz's vehicle. *Id.* Sugar Transport admitted vicarious liability for Carcamo's actions. *Id.,* 126 Cal.Rptr.3d 443, 253 P.3d at 539. The trial court allowed the jury to consider claims for vicarious liability and direct negligence. *Id.* The intermediate appellate court affirmed, holding that California's adoption of the *McHaffie* Rule in *Armenta v. Churchill,* 42 Cal.2d 448, 267 P.2d 303, 309 (Cal. 1954), was no longer proper in light of California's subsequent adoption of comparative fault. *Diaz,* 126 Cal.Rptr.3d 443, 253 P.3d at 540.

[¶24] At trial the jury allocated forty-five percent of the negligence to Tagliaferri, twenty percent to Carcamo, and thirty-five percent to Sugar Transport. *Id.,* 126 Cal. Rptr.3d 443, 253 P.3d at 538. This resulted in Sugar Transport paying fifty-five percent of the damages even though Tagliaferri admitted that the accident was mostly her fault. *Id.* The California Supreme Court rejected this allocation and reversed the court of appeals. It affirmed its holding in *Armenta* "that an employer's admission of vicarious liability for an employee's negligent driving in the course of employment bars a plaintiff from pursuing a claim for negligent entrustment." *Diaz,* 126 Cal.Rptr.3d 443, 253 P.3d at 544.

[¶25] Finally, allowing negligent training and hiring claims to be tried with vicarious liability claims would lead to practical compli-

cations at trial. "[E]vidence necessary to prove direct negligence claims is likely to be unfairly prejudicial to the [driver]. For instance, evidence of an employee's prior convictions for traffic offenses, relevant to the issue of the employer's negligent hiring, may lead a jury to 'draw the inadmissible inference that because the [driver] had been negligent on other occasions he was negligent at the time of the accident.'" *Ferrer*, 390 P.3d at 845 (quoting *Houlihan*, 78 A.2d at 665). Perceived flaws in training might also lead the jury to conclude that an employee was at fault, even if his actions were not negligent. These kinds of issues could be addressed by bifurcating vicarious claims from direct negligence hiring, training, and retention claims under Wyoming Rule of Civil Procedure 42(b).[11] This seems futile, however. Presumably trial judges would try the vicarious liability claim, including damages, first. If the defendant prevailed, there could be no direct negligence claim. *Beavis*, ¶¶ 19-20, 20 P.3d at 516. If the plaintiff prevailed and was award-

ed damages, that award would be the same as for a direct negligent training claim.

[¶26] The district court correctly held that Bogdanski could not pursue claims of both vicarious liability and direct liability for negligent training when FedEx admitted its liability for Budzik's negligence. We must now review the summary judgment ruling on the vicarious liability claim.

## B. Vicarious Negligence Claim against FedEx Based on Budzik's Claimed Negligence

[¶27] As we noted above, under Wyoming's summary judgment standard, the nonmoving party has no obligation to come forward with materials beyond the pleadings if the movant fails to make a prima facie case that there is no genuine issue of material fact. *Amos*, ¶ 15, 359 P.3d at 958-59. And, as we have already also noted, we afford the district court's ruling on summary judgment no deference.[12]

---

11. "(b) *Separate Trials.*—For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any right to a jury trial." W.R.C.P. 42(b).

12. The dissent argues that we should adopt the standard from *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), which it correctly points out applies in federal court. By that standard, a movant may shift the burden to the nonmoving party to produce evidence of the elements of its case without making the *prima facie* case required by Wyoming law, and by federal law before *Celotex*. 10A Charles Alan Wright et al., *Federal Practice & Procedure—Civil Procedure* § 2727.1 (4th ed. Apr. 2017 update) (under *Celotex*, it is not necessary for the movant to introduce any evidence to prevail on summary judgment); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970) (requiring the movant to make a *prima facie* case); *Amos*, ¶ 15, 359 P.3d at 958-59.

As the dissent concedes, neither party briefed the issue of whether this Court should adopt the *Celotex* standard in this case—neither even cited the case. They relied upon the same standard stated in this opinion. It would be quite proper to raise the *Celotex* issue for this Court's consideration, but that simply wasn't done. Although we often find federal case law concerning federal procedural rules similar to ours persuasive, we are not bound by those decisions. Other states

with procedural rules similar to the federal rules, as ours are, have declined to adopt the *Celotex* standard. Jeffrey O. Cooper, *Summary Judgment in the Shadow of Erie*, 43 Akron L. Rev. 1245, 1247-49 (2010). *See also Kahf v. Charleston South Apartments*, 461 N.E.2d 723, 729 (Ind. Ct. App. 1984) (stating that the moving party must "shoulder the burden of establishing the lack of a material factual issue"); *Roubideaux v. Davenport*, 247 Neb. 746, 530 N.W.2d 232, 235 (Neb. 1995) ("In the absence of a prima facie showing by the movant that she is entitled to summary judgment, the opposing party is not required to reveal evidence which [sic] she expects to produce at trial to prove the allegations contained in her petition."). *Celotex* was part of a trilogy of decisions made at the same time, which changed preexisting summary judgment rules in the federal courts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The other cases in the series have also received a mixed review in the state courts. *Cooper, supra*, at 1247-49.

We have stated that "this court will not frame the issues for the litigants and will not consider issues not raised by them and not supported by cogent argument and authoritative citation." *State v. Campbell Cty. Sch. Dist.*, 2001 WY 90, ¶ 35, 32 P.3d 325, 333 (Wyo. 2001). We should not deviate from this rule when *sua sponte* modification of the standard for summary judgment could impact every civil claim for damages in the state courts. We will reserve consideration of the merits of *Celotex* for another case with adequate briefing.

[¶28] Bodganski claimed, mostly through affidavit with the attached report of an expert on trucking industry standards, that Appellee had failed to meet industry standards in three ways: (1) failing to place emergency triangles behind the trailers, (2) failing to chain up in light of deteriorating weather conditions, and (3) failing to lock the rear axles on the tractor so that they pulled together rather than separately.

[¶29] The claim that Budzik failed to timely place the emergency triangles is the most obvious basis on which summary judgment should have been denied. 49 C.F.R. § 392.22(b) provides that "whenever a commercial motor vehicle is stopped upon the traveled portion or the shoulder of a highway for any cause other than necessary traffic stops, the driver shall, **as soon as possible**, but in any event within 10 minutes, place the warning devices required by § 393.95 of this subchapter." (Emphasis added.) The warning devices prescribed by 49 C.F.R. § 393.95 are "[t]hree bidirectional emergency reflective triangles that conform to the requirements of [federal standards]." Bogdanski's expert on trucking industry standards, Michael Williams, testified that a driver should immediately place the triangles when he knows his truck is stuck.

[¶30] Budzik's testimony indicates that he was stopped for five to ten minutes because of traffic backed up ahead of him, evidently because of an accident to the west. He was stopped in the passing lane, and there was a long line of vehicles behind the rig by the time he tried to move it. He was unable to get the truck moving due to ice and snow and perhaps an incline. He spent a minute or two trying to get the truck unstuck, and then he woke Bogdanski, who had to get dressed before leaving the tractor.

[¶31] Although Budzik knew that emergency triangles were located in a box on the catwalk between the tractor and the lead trailer, he did not leave the tractor and made no effort to place them while Bogdanski

dressed and exited the vehicle. In the meantime, the traffic backed up behind the FedEx semi moved around it by pulling into the right lane.

[¶32] This evidence was sufficient to raise a genuine issue as to whether Budzik breached a duty. Appellant is entitled to all favorable inferences that can be reasonably drawn from the evidence. This truck was stalled in the passing lane on a busy interstate highway, and a reasonable juror could conclude that it was imperative to set the triangles immediately to avoid the sort of accident that occurred. The record, viewed in the light most favorable to the Appellant as the nonmovant, indicates that he may have had time to do so while there was a protective barrier of stopped vehicles behind him.

[¶33] Of course, the next question is whether the record reflects causation—i.e., that placing the triangles would have made a difference. FedEx argues that Bogdanski did not present evidence showing that the accident could have been avoided or would have been less severe if the triangles had been placed. It is true that no expert, such as an accident reconstruction specialist, testified that the triangles would have allowed an attentive operator in the rear-ending driver Marinov's position to realize that the FedEx semi was stopped in the passing lane. However, it is also true that FedEx did not offer expert or other testimony that placing the triangles would not have made a difference. Williams did testify that reflective triangles could be seen up to one-half to three-quarters of a mile, depending on the line of sight permitted by the terrain and any other obstructions to view. He also pointed out the obvious—the triangles indicate that a vehicle is stopped, as opposed to moving slowly with emergency flashers on.

[¶34] FedEx's strategy was to point out that Bogdanski did not have an expert on this point, rather than making a *prima facie* showing that the triangles would have made no difference if they had been deployed.[13]

---

13. The district court and the dissent also focus on Williams' admitted inability to testify as an expert on accident reconstruction. We are not so sure expert testimony is required, given the state of this record. Marinov, the driver of the semi

that rear-ended the FedEx truck, may testify as to the effect triangles would have had on his recognition of the hazard the stopped truck presented. Given the standard we apply on summary

Under our summary judgment standard, however, because FedEx did not make a *prima facie* showing, the burden never shifted to Bogdanski to make that showing, and he was entitled to stand on the pleadings on that issue. *Amos*, ¶ 15, 359 P.3d at 958-59.

[¶35] The question of whether Budzik was negligent in failing to chain up and in allegedly not locking the tractor axle or differential are closer calls. Bogdanski's expert Williams indicated that he failed to meet industry standards in both respects. However, the undisputed record shows that no other trucks were chained up that night, and that Budzik had no trouble controlling the tractor on the ice or snow until he became stuck after being forced to stop because the interstate was blocked by other vehicles.

[¶36] In addition, no one was able to testify that the tractor in question had an axle that could be locked so that both wheels turned on an axle at once.[14] On the other hand, no one could testify that it did not. We decline to consider whether the district court could or should enter a W.R.C.P. 56(g) finding removing those contentions from consideration at trial. The district court can determine how to deal with those questions on remand.

### CONCLUSION

[¶37] Bogdanski will undoubtedly have a difficult case to try. At trial, the burden of proof will fall on him to prove negligence, causation, and damages by a preponderance of the evidence—he will not be able to avoid that burden as he did on summary judgment.[15] His own arguable negligence (he trained Budzik, and did not direct him to place the triangles immediately when Budzik woke him) will probably earn him a place on the verdict form so that his fault can be

judgment, this vacuum of proof favors Bogdanski, not FedEx.

14. The record does not even contain a copy of the accident report, which would probably have identified the make and model of the tractor.

15. We note that the worst that can happen in this case, if it goes to trial, is that Bogdanski will get a chance to present his claim to a jury. That jury may or may not find in his favor, but it is not a

compared. The fault of Marinov, the driver of the other semi, will also have to be compared. However, summary judgment is not a means to allow judges to jump ahead and write the end of the mystery if a movant fails to make an adequate summary judgment showing, even if the nonmovant's case appears to be weak. On this record, Bogdanski is entitled to try his luck with a jury on his vicarious liability claim against FedEx.

[¶38] We affirm the summary judgment granted to Budzik individually, because that ruling was not challenged on appeal. We also affirm the district court's ruling on the negligent training claim. We reverse and remand the vicarious liability claim for further proceedings consistent with this opinion.

HILL, Justice, concurring in part and dissenting in part, in which KAUTZ, J., joins.

[¶39] I concur with the majority opinion's adoption of the *McHaffie* Rule and the opinion's disposition of Mr. Bogdanski's negligent training claim against FedEx. I disagree, however, that triable issues of fact preclude summary judgment on Mr. Bogdanski's vicarious liability claim against FedEx, and I therefore respectfully dissent from the reversal of the district court's grant of summary judgment.

[¶40] My disagreement with the majority opinion stems from my view of how a movant must meet its initial summary judgment burden in a case such as this where the nonmovant will bear the burden of persuasion at trial. I would interpret Rule 56(c) in keeping with federal precedent, which, dating back to *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), has defined the parties' respective burdens as follows:

tragedy for a jury trial to take place in district court when a movant has not made an adequate showing on summary judgment. Perhaps he will get past a W.R.C.P. 50 motion for judgment as a matter of law, and perhaps he will not. Rule 56 (summary judgment) plays an important role in our jurisprudence, but it does not allow trial courts to skip ahead to the end of what appear to be weak cases when an appropriate showing has not been made under the current standard.

The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In so doing, a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. *Id.* at 325, 106 S.Ct. 2548. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. *Id.*

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. Fed.R.Civ.P. 56(e).

*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003); *see also Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137-38 (10th Cir. 2016).

[¶41] I will begin by explaining why I would follow the *Celotex* line of cases in reviewing the district court's summary judgment ruling. I will then turn to the result that follows when we apply what I believe is fundamentally the most sound assignment of summary judgment burdens in a case like this.

## A. *Celotex* Interpretation of Rule 56(c)

[¶42] In *Celotex*, the Supreme Court held:

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

[¶43] Our Court has twice recognized the basic premise underlying *Celotex*, holding:

The entry of a summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

*Franks v. Olson*, 975 P.2d 588, 593 (Wyo. 1999); *see also Harper v. Fidelity and Guar. Life Ins. Co.*, 2010 WY 89, ¶ 30, 234 P.3d 1211, 1221 (Wyo. 2010) (citing the same *Celotex* holding).

[¶44] This Court has not, however, been presented with the opportunity to address whether our recognition of the *Celotex* holding affects a summary judgment movant's burden in a case where the nonmovant bears the burden of persuasion. I believe this case presents that opportunity.[16]

**16.** I understand the parties did not cite *Celotex* in their summary judgment arguments and the district court did not apply a *Celotex* analysis in its ruling. Still, this Court may affirm summary judgment on any legal basis supported by the record, *Williams v. Matheny*, 2017 WY 85, ¶ 9, 398 P.3d 521, 524 (Wyo. 2017), and the record in this case supports the application of *Celotex* and affirming on that basis. Additionally, while the parties did not cite *Celotex* in their summary judgment arguments, they argued summary judgment very much as if *Celotex* were the governing standard. FedEx, the movant, cited Rule 56(c) and argued that based on the record before the court, Mr. Bogdanski had no evidence to support his claims. Mr. Bogdanski opposed the motion, not by arguing that FedEx failed to come forward with evidence sufficient shift the summary judgment burden, but by submitting evidence he contended was sufficient to create a genuine issue of material fact. Finally, I note that FedEx filed its summary judgment motion twenty months after Mr. Bogdanski filed his complaint, just over three months before the scheduled jury trial, and Mr. Bogdanski made no suggestion he needed additional time for discovery. In other words, if Mr. Bogdanski had evidence to support his claims against FedEx, he could have and no doubt would have submitted that evidence in opposition to FedEx's summary judgment motion. I therefore see no undue surprise or unfairness to the parties in affirming summary judgment using a *Celotex*-based analysis.

[¶45] Because of the similarities between Wyoming's rules of civil procedure and the federal rules, we have traditionally looked to federal precedent to interpret our rules. *See, e.g, Windham v. Windham,* 2015 WY 61, ¶ 20, 348 P.3d 836, 842 (Wyo. 2015) (quoting *Lamar Outdoor Adver. v. Farmers Co-Op Oil Co.,* 2009 WY 112, ¶ 12, 215 P.3d 296, 301 (Wyo.2009)) ("Because the Wyoming Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, federal court interpretations of their rules are highly persuasive in our interpretation of the corresponding Wyoming rules."). I see no reason to change course here.

[¶46] First, I do not see the *Celotex* holding as a significant departure from our own precedent defining summary judgment burdens. We have held:

> The party requesting summary judgment bears the initial burden of establishing a *prima facie* case that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. W.R.C.P. 56(c); *Throckmartin v. Century 21 Top Realty,* 2010 WY 23, ¶ 12, 226 P.3d 793, 798 (Wyo.2010). Until the movant has made a *prima facie* showing that there are no genuine issues of material fact, the nonmovant has no obligation to respond to the motion with materials beyond the pleadings. *Id.*

*Amos v. Lincoln Cty. Sch. Dist. No. 2,* 2015 WY 115, ¶ 15, 359 P.3d 954, 958-59 (Wyo. 2015).

[¶47] *Celotex* maintains this same order of summary judgment burdens, placing the initial burden on the movant to make the *prima facie* showing required by Rule 56(c), but clarifies how the movant's initial burden is met when it is the nonmovant who bears the burden of persuasion at trial. As one authority has explained:

> Finally, it is important to note that, as established in *Celotex,* it is not necessary for the movant to introduce any evidence in order to prevail on summary judgment, at least in cases in which the nonmoving party will bear the burden of proof at trial. The movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. ***On the other hand, the party moving for summary judgment cannot sustain its burden merely by denying the allegations in the opponent's pleadings, or merely by asserting that the nonmovant lacks evidence to support its claim. The movant must show why the opponent's allegations of fact are insufficient to support the claim for relief as a matter of law or why the court should conclude that its opponent lacks sufficient evidence.***

10A Charles A. Wright et al., *Federal Practice & Civil Procedure* § 2727.1 (2016 4th ed.) (footnotes omitted) (emphasis added).

[¶48] In addition to being in keeping with our general allocation of summary judgment burdens, the *Celotex* approach is supported by sound policy justifications. As the Supreme Court explained:

> The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1; see Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984). Before the shift to "notice pleading" accomplished by the Federal Rules, motions to dismiss a complaint or to strike a defense were the principal tools by which factually insufficient claims or defenses could be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources. But with the advent of "notice pleading," the motion to dismiss seldom fulfills this function any more, and its place has been taken by the motion for summary judgment. Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are

adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex*, 477 U.S. at 326-27, 106 S.Ct. at 2554-55.

[¶49] For the reasons stated above, I would join the majority of other state jurisdictions and interpret Rule 56(c) in keeping with the *Celotex* line of federal precedent.[17] When that is done in this case, and the summary judgment burdens are properly defined, it is impossible to find a triable issue of fact.

## B. Application of the *Celotex* Rule

[¶50] Mr. Bogdanski asserted that Mr. Budzik was negligent in his: (1) failure to put chains on the truck's drive wheels when approaching steep grades in a heavy snowstorm; (2) failure to use proper driving methods to regain traction on the slippery road, and: (3) failure to immediately put out reflective emergency triangles. On summary judgment, FedEx pointed out that Mr. Bogdanski had not designated an accident reconstructionist or human factors expert to provide testimony concerning these alleged failings and how they contributed to Mr. Bogdanski's injuries and that the record was otherwise devoid of evidence to support Mr. Bogdanski's claims. In opposition to summary judgment, Mr. Bogdanski relied solely on the opinions of his motor fleet safety expert, Michael Williams.

[¶51] The difficulty with Mr. Bogdanski's sole reliance on Mr. Williams' opinions was that those opinions, as I will discuss below, were largely speculative and unsupported by foundational facts. As such, the opinions would not be admissible at trial and were insufficient to establish a genuine issue of material fact. *Rivers v. Moore, Myers & Garland, LLC*, 2010 WY 102, ¶¶ 23-24, 236 P.3d 284, 293 (Wyo. 2010) (expert's bald assertion of an opinion, unsupported by foundational

facts, is inadmissible and will not serve to show a material issue of fact); *RB, Jr. v. Big Horn Cty. Sch. Dist. No. 3*, 2017 WY 13, ¶ 30, 388 P.3d 542, 551 (Wyo. 2017) (quoting *Jones v. Schabron*, 2005 WY 65, ¶ 11, 113 P.3d 34, 38 (Wyo. 2005)) ("Speculation, conjecture, the suggestion of a possibility, guesses, or even probability are insufficient to establish an issue of material fact.").

### 1. Failure to Use Snow Chains

[¶52] On the question of snow chain use, Mr. Williams opined that based on the recorded weather conditions on the date of the accident: 1) it "was good weather to expect ice and slippery conditions on the road;" 2) "Mr. Budzik knew or should have known that tire chains were needed to maintain traction on the highway;" and 3) "Damian Budzick was negligent by not installing chains on his vehicle and recklessly operated his vehicle in severely hazardous weather conditions." On examination, though, Mr. Williams conceded he had no factual support for his opinion. He testified:

Q. Okay. Do you know if any of the other vehicles in—on the highway were chained up?

A. I have no idea.

Q. Is there any evidence in the record that Damian Budzik had any trouble keeping his vehicle on the road prior to coming to a stop?

A. No.

Q. * * * Is there any evidence in the record to suggest that Damian Budzik was unable to bring his vehicle to a safe stop and not run into the vehicles in front of him?

A. No.

* * *

Q. * * * I mean, you don't have any basis in fact to say that Damian Budzik should have been chained up prior to the time he came to a stop; isn't that true?

---

17. *See Waste Conversion Tech., Inc. v. Midstate Recovery, LLC*, 2008 WL 5481231, * 26, n.19 (Conn. Super. Ct. 2008) (noting "*Celotex* has been adopted by rule or court decision in a majority of states," and citing cases).

A. That's my opinion, that he should have, but I don't have any basic facts to support that.

[¶53] In addition to Mr. Williams' admitted lack of foundation for his opinion, FedEx pointed out in its summary judgment reply that Mr. Williams' assumed facts were contrary to the evidence of record. Mr. Budzik testified: he had no difficulty controlling the truck at any time as he drove through Wyoming; there were other trucks on the road, none of which were using chains; and he had traction when he came to a stop before the accident. Mr. Williams' inadmissible opinion was insufficient to refute Mr. Budzik's uncontroverted testimony and was insufficient to establish a genuine issue of material fact.

## 2. Failure to Regain Traction

[¶54] Mr. Bogdanski's sole evidence on Mr. Budzik's alleged breach of duty in failing to regain traction was again the opinion of Mr. Williams. Mr. Williams opined:

Mr. Budzik displayed a lack of experience by his failure to execute basic maneuvers in attempting to move his vehicle off the road and prevent an emergency situation. Truck driving schools teach a simple technique to use to move a commercial motor vehicle on icy roads in the absence of sand or gravel. By placing the transmission in 3rd gear, locking the power divider then slowly depressing the accelerator. This will lock both rear axles so that they are pulling together and reduces the force to the wheels, helping to keep them from spinning.

[¶55] As the majority opinion recognizes at ¶ 36, the record contains no evidence that the truck Mr. Budzik was driving had the axel interlock device required to perform Mr. Williams' recommended maneuver. Moreover, Mr. Williams testified:

Q. And let me ask you. I mean, what information do you have about what Damian Budzik did or didn't do to try to get himself going?

A. Well, the only thing that I had information was that he had tried to get out of there, spinning the wheels enough that it got them nice and slick so he couldn't get

out. And then he did not put the triangles out, which is—

Q. Okay. All right. But the truth, though, is that you don't know what he actually did physically to get the truck moving?

A. No.

Q. What I just said is a correct statement?

A. Correct.

[¶56] Mr. Williams' opinion is again one without foundation. Rather than investigating the actions Mr. Budzik took to regain traction and then evaluating those actions, Mr. Williams offers a maneuver "that would be a way he *could* get that truck out." There is of course no way to know whether that maneuver would have worked to free the truck in this case, but even if we were to indulge Mr. Williams' speculation and assume it would work, the record contains no evidence that the truck Mr. Budzik was operating had the equipment required to perform the maneuver. Mr. Williams' speculative opinion is simply not admissible evidence that Mr. Budzik breached a duty of care, and Mr. Bogdanski has otherwise failed to identify any evidence to support this claim.

## 3. Failure to Place Warning Triangles

[¶57] I agree with the majority opinion that a genuine issue of fact exists on the question of whether Mr. Budzik breached a duty of care by failing to immediately place warning triangles outside the tractor-trailer. I disagree, however, that Mr. Bogdanski presented evidence sufficient to show an issue of fact on causation—that is, whether that alleged breach of duty was a proximate cause of Mr. Bogdanski's injuries.

[¶58] On the question of proximate cause, Mr. Bogdanski's sole evidence was again the opinion of Mr. Williams. On this question, Mr. Williams opined: "The failure of Mr. Budzik to initiate emergency procedures immediately resulted in an accident resulting in the severe injury to Mr. Bo[g]danski." When questioned on this opinion, however, Mr. Williams testified:

Q. All right. Now, Budzik didn't hit anybody, but Vi[k]tor Marinov, he hit somebody, right?

A. Yes.

Q. Who did he hit?

A. Well, he hit Budzik. But Mr. Marinov was—what was he doing, 60 miles an hour?

Q. Right.

A. So he had nothing to do with what Budzik did or didn't do. I mean, he had the accident. But I can't go back and say Marinov you were wrong, because he has nothing to do with what I say, and I don't care if he was going 60.

If he put the triangles out and he would have seen them, maybe there's a chance he would move over and not have had the accident. Drivers do that. I mean I can't explain why. I can't go into a big scenario why Marinov was going 60 and everybody else—don't know.

Q. Well, what you just said, Mike, you will agree that that is speculation on your part, you don't have any facts?

A. Absolutely.

Q. All right. But one of the facts we do know is that Marinov was going 60 miles an hour, correct?

A. Correct.

Q. And Marinov could not bring his vehicle to a safe stop?

A. That's correct.

Q. And you agree with me that as a professional truck driver, whether it's the Smith's program or any defensive truck driving lesson, you are required to maintain your speed such that you can bring your vehicle to a safe spot—stop?

A. Absolutely.

Q. Did Vi[k]tor Marinov on that day do that?

A. From the evidence that I see, no, he did not.

Q. * * * You will agree with me that the Wyoming Highway Patrol Investigation determined that Viktor Marinov was driving at a speed too fast for conditions?

A. Well, now you're getting into an area that I have never gone into, because I know nothing about Vi[k]tor Marinov or

his—what happened to him, or the lawsuit or anything else. I have—the only thing I have on Vi[k]tor Marinov is I have his bill of lading.

Q. Okay.

A. And that's it. I have no knowledge of him.

Q. Never crossed your mind that when you were analyzing this case, and that it's brought because Mr. Bogdanski claims significant injury, it never crossed your mind that you should analyze how it was that the vehicle and Mr. Bogdanski potentially was struck by Vi[k]tor Marinov and why that happened?

[Objection]

THE WITNESS: Again, I have nothing [to do] with that. My—my opinion and what I looked at, Marinov hit him. I don't know why he was doing 60, can't say what caused him to hit the back of the Bogdanski vehicle. But what I can say is, Budzik did not put out the triangles as he should have, and there's a chance that Marinov could have moved over to the other lane.

[¶59] To qualify as a legal cause of a plaintiff's injuries, the alleged conduct must be a substantial factor in bringing about the plaintiff's injuries. *Amos*, ¶ 27, 359 P.3d at 961 (quoting *Foote v. Simek*, 2006 WY 96, ¶ 22, 139 P.3d 455, 464 (Wyo. 2006)). We have said:

A person, no doubt, could create many "what if" scenarios that, in hindsight, might have prevented this tragic incident. But, negligence and proximate cause are never presumed from the happening of an accident, and mere conjecture cannot form the basis of liability. *Vasquez v. Wal–Mart*, 913 P.2d 441, 443 (Wyo.1996); *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 520 (Wyo. 1994); *DeWald v. State*, 719 P.2d 643, 652 (Wyo.1986); *Apperson v. Kay*, 546 P.2d 995, 998 (Wyo.1976). Guesswork is not a substitute for evidence or inference, and inference cannot be based on mere possibility. *Forbes Co. v. MacNeel*, 382 P.2 [P.2d] 56, 57 (Wyo.1963); *Wright v. Conway*, 34 Wyo. 1, 242 P. 1107, 1111 (1926). General or conclusory allegations cannot establish a genuine issue of material fact.

*Tidwell v. HOM, Inc.*, 896 P.2 [P.2d] 1322, 1324–25 (Wyo.1995).

*Jones*, ¶ 23, 113 P.3d at 39-40 (quoting with approval the lower court's ruling).

[¶60] On the question of causation, Mr. Williams offered, by his own admission, only conjecture and speculation. The record is otherwise devoid of evidence that the failure to immediately place warning triangles played any part in this accident, and Mr. Bogdanski thus failed to establish that a genuine issue of material fact exists on this question.

[¶61] Assuming this matter goes to trial, Mr. Bogdanski will have the burden to prove all elements of his negligence claims. Based on Mr. Bogdanski's evidence, or lack thereof, I have no doubt that FedEx will move for and be granted a directed verdict. In my view, the majority ruling thus fails to accomplish the goal of giving truly disputed issues of fact to a jury for resolution, which should be our reason for rejecting summary judgment and requiring a trial. By sending this case back for trial, we have instead done little more than add unnecessary cost, delay, and expenditure of judicial resources to the resolution of this case.

[¶62] Our result would be different were we to use a *Celotex* analysis, which illustrates the wisdom of *Celotex*. The *Celotex* analysis recognizes there is little to be gained by a trial if a plaintiff has had a full opportunity for discovery and is still unable to produce evidence sufficient to meet his burden of proof, or even to show a genuine issue of material fact. That is the case here, and I would therefore use the *Celotex* analysis and affirm the district court's grant of summary judgment to FedEx.